William "Skip" RICH, Appellant–
Respondent,

v.

Eric PETERS, Mike Forck and Donald
Stockman, in their capacity as Cole
County Commissioners, Respondents–
Appellants.

Nos. WD 58869, WD 58893.

Missouri Court of Appeals,
Western District.

May 22, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 3, 2001.

Application for Transfer Denied
Aug. 21, 2001.

David Brydon, Jefferson City, for appellant-respondent.

Richard G. Callahan, Jefferson City, for respondent-appellant.

Before ELLIS, P.J., LOWENSTEIN and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

Eric Peters, Mike Forck, and Donald Stockman, in their capacity as Cole County Commissioners (Commissioners), appeal the trial court's judgment declaring that Cole County Collector William "Skip" Rich is entitled to additional compensation for collecting municipal taxes for Jefferson City from 1988 through 1998. The Commissioners claim that the award of additional compensation violates certain statutory provisions that (1) prescribe the total amount of compensation a county collector can earn; and (2) require that all fees collected by a county collector be deposited in the county general revenue fund. Mr. Rich cross-appeals the trial court's denial of his request for pre-judgment interest. Because this court finds that § 50.332, RSMo 2000,[1] allowed Mr. Rich to

1. References to §§ 50.332, 52.320, and    408.020 are to the Revised Statutes of Mis-

be compensated, pursuant to a contract, for collecting Jefferson City's municipal taxes from 1988 through 1998, the portion of the trial court's judgment awarding him $4000 in annual compensation for those years is affirmed. Since this court finds that Mr. Rich was entitled to prejudgment interest on his claim, however, the portion of the trial court's judgment denying Mr. Rich's claim for prejudgment interest is reversed and remanded with instructions to the trial court.

## Factual and Procedural Background

Mr. Rich has been the duly-elected collector of Cole County since June 1, 1977. On May 4, 1983, Mr. Rich entered into an agreement with Jefferson City, Cole County, and Stanley C. Diemler, then clerk of Cole County, in which Mr. Rich agreed to collect the real and personal property taxes, and the merchants' and manufacturers' taxes for Jefferson City. Under the agreement, Cole County was to retain 1% of the revenue Mr. Rich collected on behalf of Jefferson City. Out of the 1% retained by Cole County, Mr. Rich was to receive $4000 annually as compensation for his services. The contract had a term of one year, beginning on March 1, 1983, but would automatically renew on March 1 of each subsequent year unless either party notified the other party in writing of its desire to terminate the agreement.

As neither party has indicated its desire to terminate the agreement, Mr. Rich continues to provide collection services for Jefferson City, and Cole County continues to retain 1% of the revenue Mr. Rich collects on behalf of Jefferson City. From 1988 to 1998, however, Mr. Rich did not receive any payment from Cole County for the collection services he provided for Jefferson City pursuant to the 1983 agreement.

In 1999, Mr. Rich filed suit against the Commissioners in which he sought a judgment from the court declaring that he was entitled to receive $4000 in annual compensation for collecting municipal taxes on behalf of Jefferson City for calendar years 1988 through 1996, and $3000 in annual compensation for providing those services for calendar years 1997 and 1998, after Cole County became a first-class county. Mr. Rich asked that the court order the Commissioners to pay him those amounts, plus interest. Mr. Rich also asked that the court declare the statutes upon which the Commissioners relied to deny him this compensation void as applied to him because they violate the constitutional prohibition against the impairment of contracts.

In their answer, the Commissioners denied that Mr. Rich was entitled to any compensation for collecting municipal taxes for Jefferson City from 1988 through 1998. The Commissioners first contended that pursuant to § 52.269.4, RSMo Supp. 1987, all fees collected by the collector had to be deposited into the county general revenue fund. Second, they alleged that the agreement was void and illegal by reason of the repeal of § 52.420, RSMo 1986, a statute that provided for compensation for second-class county collectors who collected municipal taxes. Finally, they claimed that even though Cole County became a first-class county in 1997, and, pursuant to § 52.320.2, collectors in first-class counties may receive additional compensation in the amount of $3000 for collecting municipal taxes, such compensation would have constituted a pay increase during Mr. Rich's term of office and thus

souri 2000, as these statutes are the versions that were in effect at all times relevant to this

lawsuit.

would have violated Article VII, Section 17 of the Missouri Constitution.

The parties subsequently filed a stipulation of facts and trial briefs. On June 28, 2000, the trial court entered a judgment declaring that the Commissioners had breached the 1983 agreement by failing to pay Mr. Rich the amounts due under the contract for the years 1988 through 1998. The court further found that the agreement was not affected in any way by the repeal of § 52.420, RSMo 1986, and the 1987 amendment to § 52.269. Finally, the court found that continuing to pay Mr. Rich the amounts contracted for under the agreement for the calendar years 1997 and 1998, after Cole County became a first-class county, did not amount to an unconstitutional increase in pay during his term of office. The court ordered that the Commissioners pay Mr. Rich $4000 per year in compensation for the years 1988 through 1998, for a total of $44,000. The court specifically denied Mr. Rich's claim for prejudgment interest. Both the Commissioners and Mr. Rich appealed.

### Standard of Review

■ This court reviews a declaratory judgment under the standard applicable to other court-tried cases. *Vocational Servs. Inc. v. Developmental Disabilities Res. Bd.*, 5 S.W.3d 625, 629 (Mo.App.1999). Therefore, this court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Because the parties have stipulated to the facts, the only question before this court "is whether the trial court drew the proper legal conclusion from the facts." *Perry State Bank v. Farmers Alliance Mut. Ins. Co.*, 953 S.W.2d 155, 157 (Mo.App.1997).

### Section 50.332 Authorized Compensation Under the Contract for 1988 Through 1996

■ This court will first address the Commissioners' two points on appeal regarding Mr. Rich's entitlement to compensation before addressing Mr. Rich's point regarding his entitlement to prejudgment interest. In their first point, the Commissioners contend that the trial court erred in finding that Mr. Rich is entitled to compensation, pursuant to the 1983 agreement, in the amount of $4000 per year for the collection of Jefferson City's municipal taxes from 1988 through 1996. The parties do not dispute that, between 1983 and 1986, Mr. Rich was entitled to and received, under the 1983 agreement, $4000 in compensation in exchange for collecting municipal taxes on behalf of Jefferson City. In 1987, Jefferson City adopted a charter form of government. At that time, Cole County was a second-class county. Section 52.420.3, RSMo 1986, set the amount of compensation for a county collector in a second-class county who contracted with a charter city to collect municipal taxes on behalf of that city:

> In all counties of the second class in which the county collector has entered into a contract with a constitutional charter city providing for the collection of municipal taxes by the collector, the collector shall be paid as compensation for the additional duties an annual salary of three thousand dollars, during the period in which the contract is effective, payable out of the county treasury.

Under this statute, for the year 1987, after Jefferson City became a charter city, Cole County paid Mr. Rich $3000 as compensation for collecting municipal taxes on behalf of Jefferson City.[2]

---

**2.** The trial court specifically found that $3000   was all that Mr. Rich was entitled to as com-

Section 52.420, RSMo 1986, was repealed in 1987 by Senate Bill 65, however, and the repeal was effective January 1, 1988. In addition to repealing § 52.420, RSMo 1986, this same senate bill enacted § 52.269, RSMo Supp.1987, also effective January 1, 1988. Section 52.269.1, RSMo Supp.1987, set the compensation for county collectors in counties other than first-class chartered counties:

> The county collector in any county, other than in a first class chartered county, shall receive an annual salary computed on an assessed valuation basis as set forth in the following schedule. Except as provided in section 50.333, RSMo, the amount provided by this section shall be the total compensation for all services performed by such collector.[3]

> * * *

> [salary schedule]

> * * *

Subsection 4 of § 52.269, RSMo Supp.1987, further provided that "[a]fter the next general election following January 1, 1988, all fees collected by the collector shall be collected on behalf of the county and deposited in the county general revenue fund."

The Commissioners argue that the repeal of § 52.420.3, RSMo 1986, and the simultaneous enactment of § 52.269, RSMo Supp.1987, indicate that the legislature intended that the collector's total compensation for all services provided, including services performed on behalf of a municipality pursuant to a contract, be that which was set forth in the salary schedule in § 52.269, RSMo Supp.1987. Moreover, they contend that the legislature's actions indicate that it intended that

all fees collected by a county collector, including those collected on behalf of a municipality pursuant to a contract, should be deposited into the county general revenue fund. Thus, the Commissioners argue, Mr. Rich was not entitled to any additional compensation for collecting municipal taxes on behalf of Jefferson City after January 1, 1988.

Mr. Rich argues that the language in § 52.269, RSMo Supp.1987, that the salary set forth in the schedule constituted his "total compensation for all services" he performed and the language that "all fees collected by the collector shall be deposited in the county general revenue fund" did not relieve Cole County from its duty to pay him under the 1983 contract or make the contract unlawful. Rather, Mr. Rich contends, his contract to collect municipal taxes on behalf of Jefferson City for the years 1988 to 1996 was controlled by another statute, § 50.332. Mr. Rich argues that § 50.332 specifically addresses contracts made between county officers, counties, and municipalities in which county officers agree to perform work on behalf of municipalities, as the statute provides that:

> Each county officer in all counties except first class counties having a charter form of government may, subject to the approval of the governing body of the county, contract with the governing body of any municipality located within such county, either in whole or in part, to perform the same type of duties for such municipality as such county officer is performing for the county. Any compensation paid by a municipality for services rendered pursuant to this section shall be paid directly to the county, or county officer, or both, as provided in

---

pensation for collecting Jefferson City's taxes in 1987. The parties do not dispute this on appeal.

3. The exception provided for in § 50.333, RSMo Supp.1987, is not relevant to this case.

the provisions of the contract, and any compensation allowed any county officer under any such contract may be retained by such officer in addition to all other compensation provided by law.

■■■ Resolution of the parties' dispute over which statute controls requires this court to interpret § 52.269, RSMo Supp. 1987, and § 50 .332. When interpreting statutes, courts are to "ascertain the intent of the legislature from the language used and give effect to that intent, if possible, and to consider the words used in their plain and ordinary meaning." *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. banc 1995). Statutes relating to the same subject matter are considered *in pari materia* and are to be construed together, "even though the statutes are found in different chapters and were enacted at different times." *State ex rel. Dir. of Revenue v. Gaertner*, 32 S.W.3d 564, 566 (Mo. banc 2000). "Where two statutes concerning the same subject matter, when read individually, are unambiguous, but conflict when read together, we will attempt to reconcile them and give effect to both." *Habjan v. Earnest*, 2 S.W.3d 875, 881 (Mo.App.1999). If one statute deals with a subject in general terms and one deals with the same subject in more specific terms, the two statutes should be harmonized if possible. *Gaertner*, 32 S.W.3d at 566. To the extent that this conflict cannot be reconciled, however, the more specific statute prevails over the general statute. *Id.*

Comparing the statutes at issue in this case, both § 52.269, RSMo Supp.1987, and § 50.332 address the compensation a county collector in a second-class county can receive for performing collection services. These statutes seem to conflict when read together, because § 52.269, RSMo Supp. 1987, states that the compensation provided for in that statute shall be the total amount of compensation the collector can receive for all services performed. Section 50.332, however, allows the collector, as a county officer, to receive additional compensation for services performed for a municipality pursuant to a contract.

These statutes can be harmonized. Although the Commissioners contend that § 50.332 is the more general statute because it authorizes compensation to "each county officer," while § 52.269, RSMo Supp.1997, specifically concerns compensation to collectors, this court disagrees. The issue relevant to this case is authorization for compensation pursuant to a contract for the county collector to perform collection services on behalf of a municipality. On that issue, § 50.332 specifically authorizes such compensation, as it provides that each county officer in all counties except first-class chartered counties can contract with the county and a municipality to perform the same type of services for such municipality as the county officer performs for the county, and keep any compensation provided for in the contract. The more general statute on the issue is § 52.269, RSMo Supp.1987. While § 52.269, RSMo Supp.1987, sets out the permissible compensation for county collectors pursuant to a salary schedule, it does not refer to compensation for any collection work done by the collector pursuant to a contract with a municipality.

■■■ Further construing the two statutes, in authorizing the county officer to keep any compensation allowed under the contract with the municipality, § 50.332 states that such compensation shall be "in addition to all other compensation provided by law." When interpreting statutes, this court presumes "that the legislature intended that every word, clause, sentence, and provision of a statute have effect. Conversely, it will be presumed that the legislature did not insert idle verbiage or

superfluous language in a statute." *Hyde Park Hous. P'ship v. Dir. of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993). The language, "in addition to all other compensation provided by law," can be interpreted to refer to statutes like § 52.269, RSMo Supp.1987, which set forth a salary schedule for county officers. Otherwise, the language "in addition to all other compensation provided by law" would be excess verbiage.

This interpretation does not render superfluous the language in § 52.269, RSMo Supp.1987, which the Commissioners contend bars the collector from receiving any additional compensation or portion of the fees he collected on behalf of Jefferson City. This court interprets the statement in § 52.269.1, RSMo Supp.1987, that the salary amount provided by the statute "shall be the total compensation for all services performed by such collector" as referring to compensation the collector receives for the collection services the collector performs on behalf of the county as part of the collector's regular duties, and not those for which the collector specially contracts with a municipality pursuant to § 50.332. Likewise, this court interprets the statement in § 52.269.4, RSMo Supp. 1987, that "all fees collected by the collector shall be collected on behalf of the county and deposited in the county general revenue fund" as referring to all fees collected by the collector on behalf of the county as part of the collector's regular duties, and not those fees collected on behalf of a municipality pursuant to a contract made under § 50.332. Consistent with the principles of statutory construction, such an interpretation reconciles the two statutes, and gives effect to them both. *St. Charles County v. Dir. of Revenue,* 961 S.W.2d 44, 47 (Mo. banc 1998).

Moreover, to adopt the Commissioners' argument that § 50.332 does not apply to county collectors, this court would have to read an exception into § 50.332 that does not exist. Specifically, this court would have to find that § 50.332 applies to all county officers who enter into contracts with municipalities except county collectors. To read such an exception into the statute would be contrary to the statute's plain language that it applies to "[e]ach county officer."

Therefore, this court finds that, for the years 1988 through 1996, while Cole County was a second-class county, § 50.332 governed Mr. Rich's 1983 contract with Cole County and Jefferson City. Pursuant to this contract, Mr. Rich was to provide collection services for Jefferson City, and Cole County was to retain 1% of the revenue Mr. Rich collected on behalf of Jefferson City. Out of this 1%, Cole County was to pay Mr. Rich $4000 per year. Because Mr. Rich provided such collection services under the contract from 1988 to 1996, and Cole County received 1% of the revenue, the trial court did not err in ordering the Commissioners to pay Mr. Rich $4000 per year for the years 1988 through 1996. The Commissioners' first point is denied.

### Section 50.332  Authorized Compensation Under the Contract for 1997 and 1998

In their second point, the Commissioners contend that the trial court erred in finding that Mr. Rich was entitled to $4000 in annual compensation for 1997 and 1998. Although the Commissioners had argued at trial that Mr. Rich was not entitled to the additional compensation for these years because it would have constituted a pay increase during his term in office in violation of Article VII, Section 17, of the Missouri Constitution, the Commissioners have abandoned this argument on appeal. Since the entry of the trial court's judgment, the Commissioners have

paid Mr. Rich $3000 in additional compensation for each of the years 1997 and 1998. On appeal, the Commissioners contest only the trial court's judgment ordering them to pay the additional $1000 in compensation for collecting Jefferson City's municipal taxes for each of those years.

The Commissioners argue that when Cole County became a first-class county in 1997, Mr. Rich's contract to collect Jefferson City's municipal taxes then became governed by § 52.320.2. Section 52.320.2 provides that:

> In all counties of the first class not having a charter form of government the collector of revenue may enter into a contract with a city providing for the collection of municipal taxes by the collector. Any compensation paid by a city for services rendered pursuant to this section shall be paid directly to the county, or collector, or both, as provided in the contract, and all compensation, *not to exceed three thousand dollars annually from all such contracts,* allowed the collector under any such contract may be retained by the collector in addition to all other compensation provided by law.

(Emphasis added.) Based upon this statute, the Commissioners contend that Mr. Rich's compensation for collecting Jefferson City's municipal taxes for 1997 and 1998 was limited to $3000 per year.

Mr. Rich argues that even though Cole County became a first-class county in 1997, his contract with Jefferson City was not controlled by § 52.320.2, but rather continued to be controlled by § 50.332. Because § 50.332 contains no limit on the amount of compensation the county officer can receive pursuant to a contract to perform services on behalf of a municipality, Mr.

Rich argues that he was entitled to the $4000 compensation amount provided for in the contract.

In making his argument, Mr. Rich relies on *State ex rel. Dankelson v. Holt,* 994 S.W.2d 90 (Mo.App.1999), a Southern District case that addressed the relationship between §§ 50.332 and 52.320.2 in the context of a quo warranto proceeding.[4] In *Dankelson,* the county prosecutor alleged that the county collector of Jasper County, a first-class non-chartered county, had forfeited his office by violating § 52.320.2. *Id.* at 91. Specifically, the prosecutor alleged that the collector had retained more than $3000 in compensation for collecting municipal taxes on behalf of the City of Joplin pursuant to a contract entered into by the collector, the Jasper County Commission, and the City of Joplin. *Id.* The trial court agreed, holding that the collector was subject to the $3000 limitation contained in § 52.320.2, and had forfeited his office by retaining more than that amount. *Id.* at 92.

The Southern District of this court reversed, however. Following the "fundamental admonition" of statutory construction "that if two statutes can be reconciled, both should be given effect," the court harmonized the two statutes. *Id.* at 93–94. In comparing §§ 50.332 and 52.320.2, the court first noted that under § 50.332, a county officer, which would include the county collector, is required to obtain the approval of the county's governing body of any contract the officer enters into with a municipality to provide services for the municipality. *Id.* at 93. Section 52.320.2, however, does not require the collector to obtain such approval before entering into a

4. The case cited the 1994 version of these statutes, however, the statutes have remained unchanged since that time. Therefore, the

Revised Statutes of Missouri 2000 is the correct version of these statutes.

contract to provide services for a municipality. *Id.*

The court reasoned that, although § 50.332 contains no limit to the amount of compensation a county officer can receive pursuant to a contract with a municipality, the statute's "requiring approval of the contract by the county's governing body ensures the county will benefit from the contract" and prevents the officer from receiving excessive compensation from the municipality "with no benefit to the county." *Id.* In comparison, while § 52.320.2 does not require the approval of the county's governing body, it does provide an "internal safeguard" against the collector receiving excessive compensation by limiting the collector's annual compensation to $3000 " 'from all such contracts' " with municipalities. *Id.* (quoting § 52.320.2).

The court found that a collector in a first-class non-chartered county who wishes to contract with a municipality to collect taxes for the municipality has a choice between contracting under § 50.332 and § 52.320.2. *Id.* at 94. If the collector chooses to contract under § 50.332, where the compensation is not limited to $3000, the collector must obtain the approval of the county's governing body. *Id.* If the collector chooses to contract under § 52.320.2, the collector need not obtain the governing body's approval of the contract, but the collector's compensation is limited to the aggregate annual amount of $3000 from all such contracts. *Id.* Because the Jasper County Commission was a party to the collector's contract to collect municipal taxes on behalf of the City of Joplin and thus had approved the contract, the court in *Dankelson* found that the contract was governed by § 50.332, and was not subject to the $3000 limit in § 52.320.2. *Id.* at 95.

In so holding, the court in *Dankelson* specifically rejected an argument similar

to the one made by the Commissioners in this case—that § 52.320.2 controls because it is newer and more specific than § 50.332 and, therefore, indicates the legislature's intent that the $3000 limit applies to all contracts with municipalities to provide tax collection, regardless of whether the county's governing body approved the contract. *Id.* at 94. The court acknowledged that § 52.320.2 applies to collectors in first-class non-chartered counties and became effective six years after § 50.332, which applies to all county officers except those in first-class chartered counties. *Id.* Nevertheless, the court reasoned that the legislature's failure to include a provision in § 52.320.2 requiring the approval of the county's governing body of the contract indicates the legislature's intent to grant collectors more authority under that statute to contract with municipalities than that conferred under § 50.332:

> [T]he absence of a requirement for approval of the contract by the county's governing body in the newer statute arguably indicates the General Assembly intended to grant collectors in first class counties without a charter form of government additional—but limited—authority in the newer statute, i.e., authority to contract with municipalities for tax collection without approval by the county's governing body when the collector's additional compensation would be within the monetary limit of the newer statute.

*Id.* Thus, rather than impose the $3000 cap on all contracts in which first-class county collectors agree to collect taxes on behalf of municipalities, the court construed § 52.320.2 as merely conferring upon those collectors the power to enter into such contracts without having to obtain the approval of the county's governing body. The court determined that such a construction was the only way that §§ 50.332

and 52.320.2 could be reconciled so that both statutes can be given effect. *Id.*

This court finds the Southern District's reasoning in *Dankelson* persuasive, and applies it to this case. Cole County was a party to the 1983 contract providing that Mr. Rich would collect municipal taxes on behalf of Jefferson City. As Mr. Rich obtained the approval of Cole County's governing body to enter into such a contract, when Cole County became a first-class county in 1997, the contract continued to be governed by § 50.332 and not § 52 .320.2. Thus, the $3000 limit contained in § 52.320.2 does not apply to Mr. Rich's contract. Because the contract provided that Mr. Rich was entitled to $4000 in compensation, the trial court did not err in ordering the Commissioners to pay Mr. Rich $4000 per year for 1997 and 1998. The Commissioners' second point is denied.

### Section 408.020 Entitles Mr. Rich to Prejudgment Interest

In Mr. Rich's sole point on appeal, he claims that the trial court erred in failing to award him prejudgment interest. Mr. Rich asserts that he is entitled to prejudgment interest under § 408.020, which provides:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

Mr. Rich argues that this statute mandates that he be awarded prejudgment interest on the $44,000 judgment against the Commissioners because $4000 was due and payable under the 1983 written contract after Mr. Rich collected Jefferson City's municipal taxes each year from 1988 to 1998. The Commissioners contend that Mr. Rich is not entitled to prejudgment interest because there was no evidence that he made a demand prior to filing his lawsuit, and a demand must be made before prejudgment interest can be awarded.

Section 408.020, however, "distinguishes between suits on written contracts and suits on accounts with respect to the date upon which interest begins to accrue." Mo. Damages, § 19.63 (MoBar 1988, 1990). The Commissioners are correct that prejudgment interest on a suit involving an account claim does not begin to accrue until the date the creditor makes a demand or files the lawsuit. *McCormack v. Stewart Enters., Inc.,* 956 S.W.2d 310, 314 (Mo.App.1997). Contrary to the Commissioners' assertion, however, § 408.020 does not require a creditor seeking prejudgment interest on moneys due and payable under a written contract to make a demand for payment before interest will begin to accrue. Mo. Damages, *supra* at § 19.63. "In actions for breach of contract, interest ordinarily runs from the date of the breach or the time when payment was due under the contract." *Wulfing v. Kansas City S. Indus., Inc.,* 842 S.W.2d 133, 160 (Mo.App.1992). Here, $4000 in compensation was due Mr. Rich under the contract for each year he collected municipal taxes on behalf of Jefferson City. The Commissioners do not dispute that Mr. Rich collected Jefferson City's municipal taxes for each of the years 1988 through 1998, and did not receive any payment for those services as provided for in the 1983 written contract. Therefore, under § 408.020, Mr. Rich is entitled to pre-

judgment interest on the $4000 annual compensation amount for the years 1988 through 1998, and the trial court erred in denying his request for prejudgment interest. Mr. Rich's point is granted.

The trial court's judgment finding that Mr. Rich was entitled to $4000 in compensation for collecting Jefferson City municipal taxes for each of the years 1988 through 1998 is affirmed. The trial court's judgment denying Mr. Rich prejudgment interest is reversed, and the cause is remanded to the trial court. On remand, the trial court is directed to enter a judgment awarding Mr. Rich prejudgment interest.

All concur.