**BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF SPRING-FIELD, R–12 and Greene County, Missouri, Plaintiffs–Respondents,**

v.

**CITY OF SPRINGFIELD, Missouri, Defendant–Appellant.**

No. 26453.

Missouri Court of Appeals, Southern District, Division One.

Sept. 8, 2005.

Application for Transfer Denied Oct. 7, 2005.

Application for Transfer Denied Nov. 22, 2005.

Neil R. Shortlidge, Stephen P. Chinn, and Paul A. Campo, Stinson, Morrison, Hecker, L.L.P., Overland Park, Kansas and Paul F. Sherman, Mann, Walter, Bishop & Sherman, P.C., Springfield, MO, for Appellant City of Springfield.

Ransom A. Ellis III and Laura J. Johnson, Ellis, Ellis, Hammons & Johnson, Springfield, MO, for Respondent Board of Education of the School District of Springfield, R–12.

Theodore L. Johnson III and John W. Housley, Office of Greene County Counselor, Springfield, MO, for Respondent Greene County, Missouri.

JAMES K. PREWITT, Judge.

City of Springfield, Missouri ("City") appeals from summary judgment in favor of the Board of Education of the School District of Springfield, R–12 ("School Board") and Greene County, Missouri ("County") regarding the application of § 89.380, RSMo 2000, to public facilities of School Board and County.

## Background

In March of 2001, County purchased five parcels of real property in the 1200 block of North Robberson, in the city of Springfield, for the purpose of relocating and constructing a residential treatment center for juveniles under the authority of the Greene County Juvenile Court, pursuant to § 211.161(3), RSMo. Thereafter, property at 1200 North Boonville Avenue was also acquired by County. Although County voluntarily initiated contact with neighboring residents in order to address their concerns and obtain input regarding the proposed treatment center, there was opposition to its relocation, and neighboring residents expressed their opposition to members of Springfield City Council ("Council").

On March 22, 2001, City's Planning and Zoning Commission ("Commission") adopted an "updated Mid–Town Neighborhood Plan as an element of the Master Plan for the development of the City[.]" City had adopted a comprehensive Master Plan in December of 1996. The Master Plan, a planning and zoning ordinance, is administered by City's Planning and Development Department and the Commission. In addition to provisions for historic preservation, center-city development, public improvements, and parks and recreational areas, the Master Plan also included a "Shared–Use Principle." This element of the Master Plan provided for cooperation between City, County and other political jurisdictions in issues involving growth management and land use, including "recommendations concerning the location, extent and character of public 'facilities' within the city." City contends that County approved the Master Plan on March 17, 1997 and that both Respondents contributed to and participated in the development of the plan.

By passage of Resolution No. 8834 on April 2, 2001, Council adopted the updated Mid–Town plan, designed to "[p]rotect and improve the single-family character of the neighborhood[,] ... [m]anage the expansion of institutional uses without negatively affecting the ... residential portions of the neighborhood[,]" [and] "[c]oordinate public

improvements and encourage private re-development[.]" The North Robberson property purchased by County is situated within the geographical borders of the Mid–Town Neighborhood, although County purchased the property prior to the adoption of Resolution No. 8834.

On July 9, 2001, Council adopted Resolution No. 8873, "[u]rging all governmental agencies within the City of Springfield to coordinate the planning of public facilities by submitting plans for public facilities which are within the scope and recommendation of the City's Master Plan to the Planning and Zoning Commission of the City of Springfield, as required by section 89.380 of the Revised Statutes of the State of Missouri."

Early in 2002, School Board began negotiations for the purchase of real property located at 1110 North Jefferson for the expansion of a parking lot serving Central High School and the school district's administrative offices. In April of 2002, School Board initiated a review of existing educational facilities and was considering the possibility of closing and/or relocating certain public school facilities within the city.

In a letter dated February 19, 2002, City's Director of Planning and Development wrote to School District's Superintendent, Jack Ernst, advising that the purchase of land by School Board and its proposal to close school facilities triggered the application of § 89.380, RSMo 2004, and that School Board's purchase and planned closures required approval by the Commission. Separately, City Attorney Wright wrote Councilwoman Mary Collette, on February 19, 2002, stating that violation of § 89.380 provided City with the right to "commence a civil action" against any public entity. In regard to School Board's plans to close or relocate public school facilities, Wright stated that

§ 89.380 "requires the R–12 School District to submit the proposed use to the City Planning Commission." Likewise, County was advised through City's attorney that its plans for development or use of any public facility upon real property located within the city, particularly the development of the North Robberson property, would be subject to the requirements set forth in § 89.380.

On May 7, 2002, School Board filed a Petition for Declaratory Judgment contending that, under §§ 89.380 and 89.491 and City's Resolution No. 8873, Commission has no authority "to require Plaintiff Board or District to submit any of Plaintiff Board's decisions for review, approval or disapproval of Defendant City's Commission." School Board also requested a declaration that City has no authority to file any enforcement action alleging a violation for failure to comply. In support of its position, School Board asserts that its right to acquire land is specifically granted to School Board by Article I, Section 26, and Article IX, Section 1(a) of the Missouri Constitution, and § 177.073, RSMo, which, according to School Board, vests it and the school district "with exclusive power to select, locate, procure and use sites for its public schools within Defendant City, without any restriction thereon by an ordinance of Defendant City."

On May 13, 2002, County filed a Motion to Intervene, which the trial court granted on June 13, 2002. County filed its Petition for Declaratory Judgment on July 1, 2002, contending that § 89.380 has no application to County's plans to develop the North Robberson property or any other property it owns or may acquire, in that §§ 49.270 and 49.300, RSMo "vest [County] with the exclusive power to select, locate, procure and use sites for its public facilities within Defendant City without any restriction thereon[.]"

City filed its Answer and Counterclaim for declaratory judgment in response to School Board's petition on June 14, 2003. On June 21, 2002, responding to County's petition, City filed its Answer and Counterclaim for declaratory judgment. City contended that both School Board and County are subject to the provisions of § 89.380. City also requested injunctive relief requiring School Board and County to comply with the statute.

Subsequently, all parties moved for summary judgment. The trial court granted summary judgment in favor of School Board and County on June 9, 2004, finding that § 89.380 was not applicable to either Respondent, and City has no authority to seek any enforcement action against Respondents. City filed a motion to amend judgment pursuant to Rule 75.01 on July 8, 2004, which the trial court overruled on August 3, 2004. City filed Notice of Appeal on August 12, 2004.

### Issue as to Timeliness of Notice of Appeal

■ School Board and County contend that this Court lacks jurisdiction because City failed to file a timely notice of appeal, in that City moved "for an Order pursuant to Rule 75.01 amending said judgment." Respondents contend a motion filed under Rule 75.01 does not act to extend the finality of the judgment. Both assert that the judgment became final thirty days after its entry on June 9, 2004, thus the notice of appeal filed on August 12, 2004 was untimely. This issue was taken with

the case for determination when the appeal was submitted to this Court.

City's motion to amend judgment stated:

COMES NOW Defendant, the City of Springfield, Missouri ("City"), and within the thirty-day period after entry of judgment, which judgment was entered on the 9th day of June, 2004, moves the Court for an Order pursuant to Rule 75.01 amending said judgment. In support of this motion, the City refers the Court to the accompanying Suggestions in Support.

Within the Suggestions in Support of Defendant's Motion to Amend Judgment, City requests the trial court amend its judgment by striking or clarifying specified paragraphs. City also indicated therein that it was filing its motion in order to clarify issues for the appellate court and avoid further proceedings.

■ In response to this Court's order to show cause why the appeal should not be dismissed, City states that it "mistakenly referenced Rule 75.01 instead of Rule 78.04" in its motion to amend the judgment. "Generally, under Rule 75.01, a trial court retains jurisdiction for thirty days, during which it may vacate, reopen, correct, amend, or modify its judgment." *Dangerfield v. City of Kansas City,* 108 S.W.3d 769, 772 (Mo.App.2003).[1]

■ Rule 78.04 states, in part: "Any motion for new trial and any motion to amend the judgment or opinion shall be filed not later than thirty days after the entry of judgment." However, under Rule

---

1. Rule 75.01 states, in part: "The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time."

Rule 81.05(a)(2)(A) provides: "For the purpose of ascertaining the time within which an appeal may be taken: ... (2) If a party timely files an authorized after-trial motion, the judgment becomes final at the earlier of the following: (A) Ninety days from the date the last timely motion was filed, on which date all motions not ruled shall be deemed overruled[.]"

81.05, the trial court's jurisdiction may be extended up to ninety days upon the filing of an authorized after-trial motion. *American Family Mut. Ins. Co. v. Hart*, 41 S.W.3d 504, 511 (Mo.App.2000). A motion for a new trial under Rule 78.04 is such an "authorized after-trial motion." *Id.*

▮▮ "Refusing to consider the allegations of a motion because the motion fails to cite the specific rule under which it is authorized … exalts form over substance." *Blue Ridge Bank & Trust Co. v. Hart*, 152 S.W.3d 420, 425 (Mo.App.2005). "[T]here is a general tendency of courts to construe improperly titled … after-trial motions as motions for new trial." *Glandon v. Daimler Chrysler Corp.*, 142 S.W.3d 174, 177 (Mo.App.2004).

The substance of the motion qualifies it as a motion to amend under Rule 78.04, which extends the time in which the judgment became final, and so we treat it as such. The notice of appeal was timely. We now review the merits of the appeal.

### Merits of Appeal

Summary judgment is appropriate when the moving party demonstrates "no genuine issue as to any material fact and is entitled to a judgment as a matter of law." Rule 74.04(c)(3). The purpose of summary judgment is to move the parties beyond the allegations of the pleadings and to determine if a dispute in fact exists for trial. *Martin v. City of Washington*, 848 S.W.2d 487, 491 (Mo.banc 1993). On appeal from summary judgment, the record is reviewed in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). Appellate review is essentially *de novo*, as "[t]he propriety of summary judgment is purely an issue of law." *Id.*

▮▮ The Missouri Constitution gives "cities broad authority to tailor a form of government that its citizens believe will best serve their interests." Mo. CONST. art. VI, §§ 19–22. *City of Springfield v. Goff*, 918 S.W.2d 786, 789 (Mo.banc 1996). Section 89.310, RSMo 2000, empowers municipalities to appoint planning commissions with the powers and duties to promote municipal planning. Certain powers and duties include the establishment of "a city plan for the physical development of the municipality[,]" as provided in §§ 89.340 and 89.350, RSMo 2000. Section 89.350, RSMo 2000, describes the purpose of a city plan: "The plan shall be made with the general purpose of guiding and accomplishing a coordinated development of the municipality[.]" Conceptually, a master plan is "a guide to development rather than an instrument to control land use." *State ex rel. Schaefer v. Cleveland*, 847 S.W.2d 867, 871 (Mo.App.1992).

School districts are authorized under § 177.041, RSMo 2000, "to acquire real property for any purpose for which the district is authorized by law to acquire the property" through purchase agreements or condemnation. Section 177.073, states, in part, that school districts, "by an affirmative vote of not less than two-thirds of all the members, may: (1) Select, direct and authorize the purchase of sites for and authorize the construction of …, schools, … and parking facilities to be used in the operation and maintenance of the schools;" and "(2) authorize and direct the purchase of additional ground needed for school purposes."

In its first point, City contends that the trial court erred in granting summary judgment to both Respondents because § 89.380 applies to both Respondents "without qualification" and does not conflict with any other statute so as to prevent its application to either Respondent.

City contends that § 89.380 is "closely modeled" after Title I., Section 9 of Standard City Planning Enabling Act (SCPEA) of 1928. Respondents do not dispute that § 89.380 was based upon Title I, Section 9 of the SCPEA, in part, however Respondents contend that § 89.380 does not apply to them for reasons set forth hereafter. Both acts are set forth for comparison (footnotes are omitted in Section 9):

### Title I., Sec. 9, SCPEA

LEGAL STATUS OF OFFICIAL PLAN. Whenever the commission shall have adopted the master plan of the municipality or of one or more major sections or districts thereof no street, square, park, or other public way, ground, or open space, or public building or structure, or public utility, whether publicly or privately owned, shall be constructed or authorized in the municipality or in such planned section and district until the location, character, and extent thereof shall have been submitted to and approved by the commission: *Provided*, That in case of disapproval the commission shall communicate its reasons to council, which shall have the power to overrule such disapproval by a recorded vote of not less than two-thirds of its entire membership: *Provided, however*, That if the public way, ground, space, building, structure, or utility be one the authorization or financing of which does not, under the law or charter provisions governing same, fall within the province of the municipal council, then the submission to the planning commission shall be by the board, commission or body having such jurisdiction, and the planning commission's disapproval may be overruled by said board, commission or body by a vote of not less than two-thirds of its membership. The failure of the commission to act within 60 days from and after the date of official submission to the commission shall be deemed approval.

### Section 89.380, RSMo 2000

Whenever the commission adopts the plan of the municipality or any part thereof, no street or other public facilities, or no public utility, whether publicly or privately owned, and, the location, extent and character thereof having been included in the recommendations and proposals of the plan or portions thereof, shall be constructed or authorized in the municipality until the location, extent and character thereof has been submitted to and approved by the planning commission. In case of disapproval the commission shall communicate its reasons to the council, and the council, by vote of not less than two-thirds of its entire membership, may overrule the disapproval and, upon the overruling, the council or the appropriate board or officer may proceed, except that if the public facility or utility is one the authorization or financing of which does not fall within the province of the council, then the submission to the planning commission shall be by the board having jurisdiction, and the planning commission's disapproval may be overruled by that board by a vote of not less than two-thirds of its entire membership. The acceptance, widening, removal, extension, relocation, narrowing, vacation, abandonment, change of use, acquisition of land for, sale or lease of any street or other public facility is subject to similar submission and approval, and the failure to approve may be similarly overruled. The failure of the commission to act within 60 days from and after the date of official submission to the commission shall be deemed approval.

### Decision as to School Board

■ City particularly challenges the trial court's findings in favor of Respondent School Board that § 89.380 and § 177.073 "obviously conflict" and that § 89.380 conflicts with School Board's constitutional power of eminent domain under § 177.041. City contends that there is nothing in §§ 177.073 or 177.041 that conflicts with or exempts a school board from the application of § 89.380, or that would preclude a requirement that School Board submit its plan to the Commission for review.

School Board contends that the scope of section 9 of the SCPEA "expressly applies only to the 'construction or authorization' of certain public structures[,]" and that under the act, planning and zoning commissions are granted authority "to consider only the location, character and extent' of a new structure." School Board cites footnotes 46 and 50 of the act in support of its contention.

Footnote 46 of section 9 is set forth following the heading "LEGAL STATUS OF OFFICIAL PLAN" and states, in part: "[T]he State planning legislation should devise a means whereby, from the time there is a city plan or a substantial part thereof, *all matters which involve location of public buildings, improvements, utilities, etc.,* should receive city planning consideration; that is, full consideration of their bearing upon the city plan." (Italicized portion indicates text quoted by School Board.)

Footnote 50, inserted within the first sentence of section 9, following "or public building or structure," states, in part: "In every municipality there are public works and public buildings whose construction and location are determined by officials or bodies other than the municipal legislative and administrative departments."

However, footnote 50 continues by stating:

The intention is that the municipal plan and the official acts of the municipal planning commission shall be concerned with all public structures within the municipality, whether built by the municipal authorities or by nonmunicipal authorities; but, of course, it would be improper to permit the city council or other municipal body to control the actual building location of such nonmunicipal public works and buildings. Consequently, it is necessary to provide in the act that the final control in these cases shall be in the appropriate nonmunicipal board or official.

School Board also contends that § 177.073 prevails over § 89.380, in that § 89.380 "is a statute of general application, purporting to require plans for the construction, vacation, abandonment, change of use, acquisition of land for, sale or lease of any 'public facility' to be submitted to a planning and zoning commission." School Board maintains that § 177.073 specifically relates to the rights of school boards and "provides that the school board may, without restriction, 'select, direct and authorize the purchase of sites for and authorize the construction of' school facilities, and 'authorize and direct' the sale or lease of property." School Board defines the authority granted by the legislature in § 177.073 as "unfettered" and states that if § 89.380 is found to be applicable to School Board, the condemnation authority granted under § 177.041 cannot be exercised and is meaningless if plans must first be approved by a planning and zoning commission.

■ However, nearly all, if not all, public bodies which own or use property and buildings have such authority. Having such authority does not mean it cannot be limited or otherwise regulated. In construing statutes, the primary rule "is to ascertain the intent of the legislature from

the language used, to give effect to that intent if possible, and to consider words in the statute in their plain and ordinary meaning." *Day v. Wright County,* 69 S.W.3d 485, 490 (Mo.App.2000). Courts read statutes that deal with the same subject matter *in pari materia. Bartley v. Special School Dist.,* 649 S.W.2d 864, 867 (Mo.banc 1983). When one statute deals with a subject in general terms and another in specific terms, a court should harmonize the statutes when reasonable. *Id.* Only when the general statute and the specific statute cannot be reasonably harmonized does the specific statute prevail over the general statute. *Rich v. Peters,* 50 S.W.3d 814, 819 (Mo.App.2001).

The plain language of § 89.380 covers public facilities administered by a "board." That would appear to cover School Board, and we do not believe there necessarily is a conflict between § 89.380 and constitutional or statutory provisions pertaining to school boards. Section 89.380 is specific in that it covers all boards acquiring property and buildings in certain cities.

School Board can exercise its constitutional and statutory duties without conflicting with § 89.380 by submitting their plan to acquire property or construct upon such property. Even if the city commission disapproves, School Board can override its disapproval "by a vote of not less than two-thirds of its entire membership." Thus, the ultimate decision lies with School Board. We hold that School Board is subject to the provisions of § 89.380.

### Decision as to County

■ Challenging the grant of summary judgment in favor of Respondent County, City contends that the trial court erred in concluding that construing § 89.380 to grant City's Commission "any authority over [County's commission's] ability to designate and build county buildings would place Section 89.380 in direct conflict with the provisions of Sections 49.270, 49.370, 49.470, 49.520 and 211.331(4), RSMo." City contends there is no statutory conflict.

City also objects to the trial court's conclusion that the legislature never intended that county commissions be included within the scope of § 89.380. The trial court points to the use of the term "board," in § 89.380, in lieu of "the board, commission, or body," as found in section 9 of the SCPEA, which served as a model for Missouri's planning and zoning legislation. The trial court found that the legislature's decision to depart from that language in section 9 "can only be interpreted as a rejection of the SCPEA approach and a purposeful decision to exclude 'counties' or their 'commissions' from the purview of Section 89.380[.]"

■ In accordance with the provisions of Article VI, § 18(c) of the Missouri Constitution, as amended in 1970, a charter county is authorized to enact legislation concerning "any and all services and functions of any municipality or political subdivisions, except school districts[.]" *Chesterfield Fire Protection Dist. v. St. Louis County,* 645 S.W.2d 367, 370 (Mo.banc 1983). Section 211.161(3), RSMo 2000, authorizes counties to purchase property for the purpose of establishing juvenile facilities "upon request of the juvenile court[.]" Under § 49.270, county commissions may purchase and have control of land for the use and benefit of the county. Additionally, § 49.300, RSMo 2000, allows counties to condemn property for public purposes. As earlier mentioned in discussing the duties and powers of school boards, such authority is not unusual and does not mean it cannot be limited or regulated.

County contends that "[t]he plain text of Chapter 49, RSMo., . . . clearly conveys the legislature's intent to grant county

commissions ... exclusive jurisdiction over site selection for and construction of county buildings[,]" citing § 49.270 and § 49.470, which, County contends, grants "county commissions unfettered discretion to build and repair any county building[ ]." County further asserts that the legislature intended to exclude county governments because, when it purported to adopt section 9 of the SCPEA by enacting § 89.380, it did not adopt the "the submission of a plan shall be by the board, commission, or body" text of SCPEA. Section 89.380 omits the terms "commission" and "body." No where does the statute purport to relate to a county or commissions or county courts.[2]

In some contexts, "board" may be broad enough to include a "commission" or "county court," but the legislature must have had a reason to eliminate from the proposed act reference to "commission, or body." That reason would have to have been to limit the scope of the statute. Section 89.380 does not give City the ability to regulate the purchase, improvement or otherwise affect property of the County.

The judgment is affirmed as to Greene County and reversed and remanded as to School Board with directions to the trial court to modify its judgment consistent with this opinion.

GARRISON, P.J., and RAHMEYER, J., concur.

---

2. Section 89.380 was enacted in 1963. (L. 1963 p. 146 § 9). In 1983, under § 49.010, "county courts" in Missouri were designated as "county commissions." *Shawnee Bend Special Road Dist. v. Camden County Comm'n,* 800 S.W.2d 452, 460 (Mo.App.1990).