MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

IN THE INTEREST OF: A.L.W., )
 ) WD83750
 Juvenile; )
 ) OPINION FILED:
JUVENILE OFFICER, )
 ) February 23, 2021
 Respondent, )
 v. )
 )
W.W., )
 )
 Appellant. )
 )

 Appeal from the Circuit Court of Jackson County, Missouri
 Honorable Jalilah Otto, Judge

 Before Division One:
 Alok Ahuja, P.J., Thomas H. Newton, and Thomas N. Chapman, JJ.

 Mr. W.W. (Father) appeals a Jackson County Family Court order finding

child abuse or neglect. Father appeals claiming that (1) the evidence of abuse or

neglect was insufficient, and (2) the trial court improperly applied a negative

inference against Father because he did not testify. We dismiss the appeal.

 A.L.W. was born to Father and Ms. C.L. (Mother) on July 12, 2018. The

Juvenile Officer filed a petition in July 2019 alleging in Count II that Father

neglects A.L.W. and “exhibits extremely aggressive and violent behaviors” that
“he has yet to address such that the child is at risk.” The petition further alleged

that Father has physically assaulted the Mother on multiple occasions resulting

in injury, and the subject of this petition occurred on or about June 15, 2019,

when Father: (1) punched Mother, leaving a ping-pong sized knot on the back of

her head; (2) strangled Mother; (3) threatened Mother with a knife: (4) threw h er

on the floor, causing her to lose consciousness; (5) grabbed her by her hair and

dragged her into the bathroom; and (6) slammed her head against the wall. The

Juvenile Officer alleged that the child was present when the abuse occurred and

that Father then took A.L.W. from the family home and drove off with the child,

unrestrained, on his lap in the front seat.

 A protective custody hearing was held, and A.L.W. was committed to the

custody of Children’s Division for appropriate placement. An adjudication

hearing was held in October 2019, and Mother asserted the Fifth Amendment

right not to incriminate herself as to all questions asked. Grain Valley Police

Officer Corene Hutchens testified that she was dispatched to the home on the day

in question. Officer Hutchens testified that Mother approached her and told her

that Father assaulted her by punching her in the head twice, threatened her with

a knife, and choked her until she lost consciousness. Father’s counsel objected

to Officer Hutchens’s testimony as hearsay, but the court overruled the objection.

Officer Hutchens testified that A.L.W. was present when she responded and that

she personally observed injuries to Mother’s neck. She also observed in the

kitchen doorway multiple pieces of a broken vase that Mother indicated Father

 2
had thrown at her. Photographs of Mother’s injuries and the condition of the

home were entered into evidence as well.

 Detective Jennifer McClure of the Grain Valley Police Department also

testified that, during an interview on the following day, she observed injuries to

Mother’s neck, head, and top lip. Photograph Exhibits 7-15 were admitted into

evidence. Father did not testify but stipulated to the allegations in the Juvenile

Officer’s petition concerning his arrest and pending charges in Jackson County

Circuit Court of domestic assault and endangering the welfare of a child. Given

Father’s decision not to testify, the attorney for the Juvenile Officer asked the

trial court to take an adverse inference against him. Father’s counsel objected to

the Juvenile Officer’s request on the basis that no one called him to the stand.

The juvenile court in its order takes a negative inference from Father ’s failure to

testify and inferred that Father’s testimony would have been adverse to his

interests.

 On January 17, 2020, the trial court found:

 . . . Among other things, the mother’s prior inconsistent statements
 showed that, on or about June 15, 2019, the father had physically
 assaulted the mother. He had punched her in the head. He had
 threatened her with a knife. The argument had arisen regarding the
 child’s crying. He had thrown a vase to the floor. He had choked her
 to unconsciousness. The child was present in the home throughout
 the incident. As a result of the assault and the choking, the mother
 had marks on her neck and a ping pong ball size knot on her head.
 Officer Hutchens observed the red marks to the mother’s neck and
 the knot on her head. Photographs were introduced that were
 consistent with the reported injuries. The father had left the scene of
 the incident with the child in a car unrestrained. In spite of this
 incident, the mother continued to reside with the father after June

 3
 15, 2019. She stated that he had hit her and choked her to the point
 of unconsciousness, but she didn’t think he was trying to kill her.
 She stated that he had committed acts of violence against her on
 previous occasions. Officer Hutchens saw the broken vase in the
 home. Detective Jennifer McClure observed that the mother had a
 cut lip. When questioned by police about the incident, the father
 simply replied “Whatever they say happened, happened.” The court
 takes a negative inference from the mother’s refusal to answer any
 questions. The father did not testify. The court takes a negative
 inference from that and infers that the father’s testimony would have
 been adverse to his interests.

 The parties stipulated to that portion of the petition that read
 “Further, law enforcement responded to the family home and
 arrested the father where he was later charged with domestic assault
 in the second degree and endangering the welfare of a child, in the
 second degree, in case number 1916-CR03475.

 ....

 The court does find among other things, that the father’s actions
 place the child at risk of further harm or neglect absent the
 intervention of this Court. The child would not be safe in the custody
 of the father or the mother.

 The judgment was entered on January 23, 2020. A motion to amend the

judgment was filed on February 13, 2020, requesting the Family Court to remove

findings (1) against Father based on Mother’s statements to police officers, and

(2) of a negative inference against him for not testifying, or in the alternative,

take a negative inference against the Juvenile Officer for failing to call the Father

to testify. On February 24, 2020, the court denied the motion to amend or modify

judgment. Father moved to set aside the court’s denial of his post-judgment

motion, arguing that he had not been given the opportunity to file reply

suggestions in support of the motion before the court’s ruling. The court set

 4
aside the denial of the motion to amend or modify the judgment on March 20,

2020. And on April 16, 2020, the court again denied the motion to amend or

modify the judgment. Father filed this appeal on April 24, 2020.

 Appellate Jurisdiction

 “As in every case, before addressing the merits of the appellant’s claim,

we first must determine, sua sponte, our jurisdiction.” Stotts v. Progressive

Classic Ins. Co., 118 S.W.3d 655, 660 (Mo. App. W.D. 2003). Our jurisdiction

to review on the merits is predicated on the trial court's having the authority to

enter the judgment appealed. State ex rel. Freeway Media, LLC v. City of Kansas

City, 14 S.W.3d 169, 172 (Mo. App. W.D. 2000). If the trial court lacked

authority to enter the judgment on which review is sought, and the appeal is filed

out of time, then the appellate court cannot review it on the merits. Brock v.

Blackwood, 143 S.W.3d 47, 55 (Mo. App. W.D. 2004).

 Various Missouri Supreme Court Rules enter into the determination of

when a judgment becomes final and the circuit court loses the authority to control

the judgment. 1 Under Rule 75.01, the circuit court retains control over a

judgment for thirty days to vacate, reopen, correct, amend, or modify the

judgment for good cause. Under Rule 78.04, a motion to amend is an authorized

1
 The Court does not apply the juvenile court rules because they do not address the situation here.
Under Rule 110.03(2), in any proceedings under section 211.031.1(1) or (2), Rules 41 to 101 apply
“[t]o the extent not inconsistent with these rules.” The juvenile - and family-court rules do not
specifically address post-judgment motions. See Rule 119.02 (providing for court’s sua sponte power
to amend the judgment, but not providing for a motion to amend the judgment filed by a party); Rule
120.01 (addressing appeals, but not addressing timing of notice of appeal or finality of judgment).

 5
after-trial motion and extends the court’s authority to amend the judgment for up

to 90 days. Bd. of Educ. of Sch. Dist. of Springfield R-12 v. City of Springfield,

174 S.W.3d 653, 657-58 (Mo. App. S.D. 2005). Under Rule 81.05, “[i]f a party

timely files an authorized after-trial motion,” then the judgment becomes final

at the earlier of:

 (A) Ninety days from the date the last timely motion was filed,
 on which date all motions not ruled shall be deemed overruled
 [under Rule 78.06]; or
 (B) If all motions have been ruled, then the date of ruling of
 the last motion to be ruled or thirty days after entry of judgment,
 whichever is later.

Rule 81.05(a)(2).

 Generally, the trial court loses the authority to control a judgment for most

purposes once it rules on an authorized after-trial motion. State ex re. Steinmeyer

v. Coburn, 671 S.W.2d 366, 371-72 (Mo. App. W.D. 1984). In applying these

rules to the relevant facts, we see that the last timely filed authorized after-trial

motion (Father’s motion to amend or modify the judgment) was filed on February

13, 2020. Ninety days from that date was May 13, 2020. The trial court denied

this motion to amend on February 24, 2020. Based on the plain language of

Rules 81.05 and 78.06, the judgment was final when the court overruled Father’s

motion to amend the judgment on February 24, 2020, and it thereafter had no

authority to vacate its ruling denying the motion nor any authority to enter the

order of April 20, 2020, purporting to again overrule Father’s motion to amend

the judgment. We conclude that the trial court lost authority to rule on the motion

 6
to set aside the denial of Father’s motion to amend the judgment when it entered

judgment on the after-trial motion to amend.

 Rule 81.04(a) requires that an appellant’s notice of appeal be filed with

the clerk of the trial court no later than 10 days after the judgment appealed from

becomes final. Douglas v. Office of the State Cts. Adm’r, 470 S.W.3d 29, 30

(Mo. App. W.D. 2015). Under Rule 81.04(a), Father was required to file the

notice of appeal no later than March 6, 2020. Father’s April 24, 2020, notice of

appeal was not timely, and his appeal is thus ineffective. Id. “The timely filing

of a notice of appeal is a jurisdictional requirement.” Harris v. Wallace, 524

S.W.3d 88, 89 (Mo. App. W.D. 2017) (citation omitted), abrogated on other

grounds by Goldsby v. Lombardi, 559 S.W.3d 878, 883 (Mo. banc 2018). If the

notice of appeal is untimely, the appellate court is without jurisdiction, and the

appeal must be dismissed. Id.

 Conclusion

 We find that, because the April 20, 2020, judgment is void, and because

Father’s notice of appeal was not timely filed in relation to the valid final

judgment in the cause, the appeal must be dismissed. 2

 /s/ Thomas H. Newton
 Thomas H. Newton, Judge

Alok Ahuja, P.J. and Thomas N. Chapman, J. concur.

2
 A Motion to Strike part of Respondent's brief and appendix was file d by the Appellant, and due to
the disposition of this case, the motion is denied as moot.

 7