State of MISSOURI, ex rel., Paris BOUCHARD, Relator,

v.

The Honorable Thomas C. GRADY, Circuit Judge of the St. Louis City Circuit Court, Respondent.

No. ED 81756.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 19, 2002.

Kenneth K. Schmitt, St. Louis, MO, for relator.

Rufus Tate, St. Louis City Board of Election Commissioners, St. Louis, MO, for respondent.

MARY K. HOFF, Presiding Judge.

Paris Bouchard (Relator) filed a petition for a writ of mandamus or in the alternative, petition for writ of prohibition, and suggestions in support, as well as a motion to expedite the proceedings. The Board of Election Commissioners for the City of St. Louis (Board) filed suggestions in opposition. As permitted by Rule 84.24(e), we dispensed with further briefing and issued a Peremptory Writ of Mandamus ordering Respondent to vacate the order of Septem-

ber 3, 2002, and forthwith hear the election contest filed in this matter.

The election which is contested is the August 6, 2002, Democratic primary election for the Missouri House of Representatives 58th district, comprised of the City of St. Louis. Board announced the preliminary results of the primary election on August 7, 2002, which reported Rodney R. Hubbard as the winner with 1,267 votes out of 3,642 votes cast. Relator received 1,232 votes, 35 votes fewer than Hubbard, or .961 percent.

On August 19, 2002, Board released the official certified results of the primary election, which reported Hubbard with 1,266 votes, and Relator with 1,226 votes out of 3,635 cast. According to the official results, the difference between the votes received by Hubbard and Relator was 40 votes or 1.1 percent. The Secretary of State certified the results of the primary on August 21, 2002.

Pursuant to Sections 115.527 and 115.531 RSMo 2000 [1], Relator timely filed a petition contesting the primary election results on August 26, 2002, alleging various irregularities occurred in the election. On September 3, 2002, Board moved to dismiss Relator's petition claiming the trial court lacked subject matter jurisdiction to hear Relator's claim because Section 115.535 requires primary election contests to be concluded by the tenth Tuesday prior to the general election.[2] The general election for the 58th Missouri House of Representatives district is scheduled for Novem-

---

1. All subsequent statutory citations are to RSMo 2000, unless otherwise stated.

2. Prior to 1993, Section 115.535 stated "[t]here shall be no continuances except by consent, so that the case may be concluded prior to the general election." We note the prior cases based on that earlier statute which dismissed the causes as moot because the primary election contests were not heard until

after the general elections were held. *Hockemeier v. Berra*, 641 S.W.2d 67 (Mo. banc 1982); *Harter v. Kehm*, 733 S.W.2d 775 (Mo. App. E.D.1987); and *Winchester v. Adkisson*, 522 S.W.2d 825 (Mo.App. S.D.1975). Because of the significant changes made to the statute in 1993 and 1996, we find those cases not instructive here.

ber 5, 2002. Therefore, the tenth Tuesday prior to the general election was August 27, 2002, one day after Relator filed his petition. The trial court granted Board's motion to dismiss on September 3, 2002. Relator filed his petition for writ of mandamus, or in the alternative writ of prohibition, on September 11, 2002.

■■■ The right to contest an election exists by virtue of statute only and is not a common law or equitable right. *Board of Election Com'rs of St. Louis County v. Knipp*, 784 S.W.2d 797, 798 (Mo. banc 1990). The relief the courts may grant is limited to what the statutes specifically authorize. *Id.*; *Hockemeier v. Berra*, 641 S.W.2d 67, 68 (Mo. banc 1982).

Section 115.601 provides that any candidate in a primary "who was defeated by less than one percent of the votes cast for the office ... shall have the right to a recount of the votes cast for the office." Because the official results of the primary election reported Relator lost by a margin greater than one percent Relator was not entitled to an automatic recount of the votes. Section 115.527, however, permits "any candidate for nomination to an office at a primary election may challenge the correctness of the returns for the nomination charging that irregularities occurred in the election." Section 115.531 requires the party contesting the primary to file their petition "not later than five days after the official announcement of the results of a primary election is issued by ... the secretary of state."

Section 115.507(3) permits an election board to wait until the second Tuesday after the primary election to deliver the abstract of votes to the secretary of state. The secretary of state then has an additional two weeks after receiving the required abstracts to announce the results of the primary election. Section 115.511. Potentially four weeks could pass before the results of the primary election are certified by the secretary of state.

Section 115.535 provides that "[t]here shall be no continuances [in an election contest] except by consent, so that the case may be concluded not later than the tenth Tuesday prior to the general election." Because Section 115.121 requires primary elections to be held on the first Tuesday after the first Monday in August, and general elections to be held on the first Tuesday after the first Monday in November, there are approximately thirteen weeks between the primary and general elections. Assuming the election board and the secretary of state use the full time allotted to them by statute to certify primary results, a contestant's right to challenge the election results would expire a full week before the results of the primary were released. We do not believe this to have been the legislative intent behind the timing structure in the election contest statutes, and find this result to be absurd.

■■■ The primary rule of statutory construction is to ascertain the legislature's intent from the language used and give effect to that intent if possible. *Murray v. Missouri Highway and Transp. Comm'n*, 37 S.W.3d 228, 233 (Mo. banc 2001). The words used should be considered in their plain and ordinary meaning. *Id.* "Statutes should be construed in such a way as to avoid unreasonable, oppressive or absurd results." *Lincoln County Stone Co., Inc. v. Koenig*, 21 S.W.3d 142, 146 (Mo.App. E.D.2000). The entire legislative act must be construed together, and if reasonably possible, all provisions must be harmonized. *Id.* The legislature is not presumed to have intended a meaningless act. *Murray*, 37 S.W.3d at 233.

■■■ We find the language of Section 115.535 cannot have been intended by the legislature to divest the court of subject

matter jurisdiction over a timely filed primary election contest. Section 115.535 does not require that all election contests be concluded by the tenth Tuesday prior to the general election, rather it says "there shall be no continuances, except by consent, so that the case may be concluded not later than the tenth Tuesday prior to the general election." Contrary to Board's assertion, their refusal to give consent to a continuance does not mandate dismissal of Relator's petition. While Board's consent may be necessary for continuances beyond the tenth Tuesday prior to a general election, it is not required for hearings set by the court.

It would be absurd to permit a respondent to divest the court of jurisdiction over an election contest simply by refusing consent to continuances even before the hearing is held. Further, it is equally absurd to permit a respondent's use of the full time allotted by statute for certification of results to divest a contestant of his statutory right to contest primary election results, especially when a contestant may not appreciate his need to contest the results until after they have been certified.

For the court to read Section 115.535 to prohibit any proceedings on primary election contests beyond the tenth Tuesday prior to the general election would render the act meaningless. We presume the legislature did not intend a meaningless act when it enacted Sections 115.526 through 115.551, the sections addressing primary election contests.

In the case before us, Relator filed his petition on the fifth day following certification of the primary results by the secretary of state, pursuant to Section 115.531. Board argues Relator should have filed his contest sooner to avoid dismissal. Board ignores the fact that Relator could not have appreciated the need to file a petition until after the results were certified, because prior to the release of the official results, Relator believed he had lost by less than one percent of the vote and was entitled to an automatic recount of the votes under Section 115.601. If the legislature intended to require Relator to file his petition before the official results were released, it would be requiring Relator to become clairvoyant to appreciate his claim.

Board argues that a new primary could not be conducted even if the court had ordered it. Section 115.549 permits a court trying a contested primary election to order a new primary election "which shall not be less than fourteen or more than thirty days after the order is issued." Board asserts that it would not have been possible for a new primary to be held before the ballots for the general election had to be printed. Board urges that Section 115.379 requires the ballots for the general election to be printed not later than the sixth Tuesday prior to the general election. We find no such requirement in that statute. The only reference in Section 115.379 to the sixth Tuesday prior to an election is in Section 115.379.2, which provides that whenever a candidate is disqualified after 5:00 p.m. on the sixth Tuesday prior to an election, his name shall be printed on the election ballot. Section 115.379.1 provides that in the event of the death of a candidate after 5:00 p.m. on the fourth Tuesday prior to the election, his name shall be printed on the ballot. Nowhere in Chapter 115 do we find a statute requiring ballots to be printed no later than the sixth Tuesday prior to an election. Furthermore, Section 115.383 provides a vehicle for changing a name on a ballot, if necessary, after the ballots have been printed.

We find a reading of Section 115.535 that divests the courts of jurisdiction over a timely filed primary election contest would render the act meaningless. By

enacting the relevant sections, the legislature intended candidates for office to be able to contest primary election results. It is absurd to presume the legislature intended to divest the court of jurisdiction over a timely filed contest, before a hearing is held on the matter, merely because an election board expresses an intention to refuse consent to any continuances. In order to interpret the statute so as to give effect to the intent of the legislature, and to avoid an absurd result, we must conclude the trial court retains jurisdiction over primary election contests even beyond the tenth Tuesday prior to the general election. We therefore enter a peremptory writ of mandamus directing Respondent to vacate his order of September 3, 2002, and hear the election contest forthwith.

GLENN A. NORTON, Judge and SHERRI B. SULLIVAN, Judge; Concur.