**Nicholas ANDERSON by his Next Friend, Crystal ANDERSON, Appellant,**

v.

**KEN KAUFFMAN & SONS EXCAVATING, L.L.C., Respondent.**

No. WD 66777.

Missouri Court of Appeals, Western District.

Feb. 19, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 25, 2008.

Daniel C. Mizell, Esq., Lebanon, Daniel E. Hunt, Esq., Jefferson City, MO, for Appellant.

Scott R. Pool, Esq., Jefferson City, MO, for Respondent.

Before, HOWARD, C.J., LOWENSTEIN, ULRICH,[1]

_____

1. Ulrich, J. was a member of this court at the time the case was argued; however, he has subsequently retired from the court, and did not take part in the outcome of this case.

BRECKENRIDGE,[2] SPINDEN, SMART, ELLIS, NEWTON, HOLLIGER, HARDWICK, JJ., and MARTIN, S.J.

PATRICIA BRECKENRIDGE, Judge.

Nicholas Anderson, by and through his mother as next friend, Crystal Anderson, appeals the trial court's judgment dismissing his claim for wrongful death for lack of subject matter jurisdiction. Specifically, the trial court found that Nicholas's petition alleged facts that fall within the exclusive jurisdiction of the Division of Workers' Compensation. In his sole point on appeal, Nicholas asserts that the trial court erroneously declared the law by construing the version of section 287.110.1 in effect from August 28, 2005, through December 14, 2005, as a bar to his wrongful death claim. He claims that the legislature eliminated the exclusivity provision of the Workers' Compensation Act in that version of section 287.110.1. Finding no error, the trial court's judgment is affirmed.

## Factual and Procedural Background

On November 14, 2005, Brian Reeves was employed by Ken Kauffman & Sons Excavating. On that date, he was digging a trench when the trench collapsed and buried him under several feet of dirt. Mr. Reeves died as a result of the accident. He was survived by a son, Nicholas. On November 20, 2005, Nicholas, by and through his mother as next friend, Crystal Anderson, filed a wrongful death claim against Kauffman, alleging that Kauffman's failure to provide proper safety precautions for bracing the trench wall resulted in Mr. Reeves's death.

On December 30, 2005, Kauffman filed a motion to dismiss Nicholas's petition for lack of subject matter jurisdiction. Kauffman asserted that it was immune from civil liability because the Workers' Compensation Act, section 287.010 et seq., provides the exclusive remedy for a work-related injury or death. Following briefing and a hearing on Kauffman's motion, the trial court entered a final judgment dismissing Nicholas's petition on the grounds that the petition alleged facts within the exclusive jurisdiction of the Division of Workers' Compensation. This appeal followed.

## Standard of Review

■■■ "Dismissal for lack of subject-matter jurisdiction is proper whenever it appears, by suggestion of the parties or otherwise, that the court is without jurisdiction." *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003). "[W]hether the subject matter of an action falls within the exclusive jurisdiction of the Labor and Industrial Relations Commission is a question of fact, resolution of which is left to the sound discretion of the trial court." *Crow v. Kansas City Power & Light Co.*, 174 S.W.3d 523, 528 (Mo.App. W.D.2005). Nevertheless, when the facts are uncontested, as here, the question whether the trial court has subject matter jurisdiction is a question of law, which this court reviews *de novo*. *Mo. Soybean Ass'n*, 102 S.W.3d at 22.

## No Error in Dismissing Petition for Lack of Subject Matter Jurisdiction

In his sole point on appeal, Nicholas asserts that the trial court erred in dis-

---

**2.** Breckenridge, J. was a member of this court at the time the case was argued and submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this court as a special judge for the purpose of disposition of this case.

missing his petition because it erroneously declared the law by construing the version of section 287.110.1 that was in effect from August 28, 2005, through December 14, 2005, as a bar to his wrongful death claim. Specifically, Nicholas claims that his wrongful death claim arose during this 108–day period when the workers' compensation exclusivity requirement was not in effect, due to an amendment to section 287.110.1. He argues that the statutory amendment repealed the exclusivity requirement, so he could elect to pursue a wrongful death claim, rather than a workers' compensation claim. Nicholas contends that the trial court engaged in unnecessary statutory construction and failed to apply the plain language of the amended statute when it found that the legislature did not intend to eliminate the exclusivity requirement.

█ Missouri's Workers' Compensation Act states, in section 287.120.1,[3] that employers shall be liable, irrespective of negligence, to provide compensation for the personal injury or death of an employee arising out of or in the course of employment. The Act further provides that employers shall be released of all other liability for such work-related incidents. *Id.* Thus, the Act provides the exclusive rights and remedies of injured employees against their employers. *State ex rel. Tri–County Elec. Coop. Ass'n v. Dial,* 192 S.W.3d 708, 710 (Mo. banc 2006).

Before August 28, 2005, the scope of the Act was established by section 287.110.1, which read:

> This chapter shall apply to all cases within its provisions except those exclusively covered by any federal law.

Senate Bill 1, as originally introduced in the 2005 legislative session, did not contain any change to section 287.110.1. The House Committee Substitute, however, proposed the following amendment to section 287.110.1:

> This chapter shall apply to all cases within its provisions except those exclusively covered by any federal law *and those addressed in subsection 11 of section 287.120.*

(Emphasized language added.) In addition, an amendment to section 287.120 was proposed to add a new subsection, i.e., subsection 11, which would have exempted the Workers' Compensation Act from being applicable in those cases where an employee accepted workers' compensation benefits from another state.

The actual version of section 287.110.1 enacted and effective as of August 28, 2005, however, provided:

> This chapter shall apply to all cases within its provisions except those exclusively covered by any federal law and those addressed in section 287.120.

In other words, in the final version of section 287.110.1 enacted, the legislature removed the phrase "subsection 11 of" from the statute. The legislature also deleted subsection 11 from the final version of section 287.120 enacted.

During a special session in September 2005, the legislature again amended subsection 1 of section 287.110. With the amendment during the special session, the legislature changed the language back to its original version as first enacted in 1939 and unchanged until the 2005 amendment, i.e.:

> This chapter shall apply to all cases within its provisions except those exclusively covered by any federal law.

The amendment did not contain an emergency clause, so the effective date of the

---

**3.** All statutory references to section 287.120 are to the 2006 Cumulative Supplement to the Revised Statutes of Missouri 2000 unless otherwise indicated.

amended version of section 287.110.1 was December 14, 2005, under section 1.130, which provides that a law passed by the legislature takes effect ninety days after the adjournment of the session at which it was enacted. Consequently, the originally amended version of section 287.110.1, which contained the language "and those addressed in section 287.120," was in effect from August 28, 2005, through December 14, 2005. Nicholas claims that because his claim arose and was filed during this time period, under the plain language of the statute, his claim for wrongful death is not within the exclusive jurisdiction of the Division of Workers' Compensation, and the trial court erred in dismissing his petition for wrongful death.

■■■ Nicholas's appeal requires a determination of the effect of the language in the amendment to section 287.110.1, which states that Chapter 287 does not apply to those cases addressed in section 287.120. "Construction of a statute is a question of law," which an appellate court reviews *de novo*. *Delta Air Lines, Inc. v. Dir. of Revenue*, 908 S.W.2d 353, 355 (Mo. banc 1995). The primary object of statutory interpretation is to ascertain the intent of the legislature from the language used. *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 909 (Mo. banc 2006). In doing so, a court considers the words used in the statute in their plain and ordinary meaning. *Id.* at 910. Only in those cases "[w]here the language of the statute is ambiguous or where 'its plain meaning would lead to an illogical result,' " will this court " 'look past the plain and ordinary meaning of a statute.' " *Nichols v. Dir. of Revenue*, 116 S.W.3d 583, 586 (Mo.App. W.D.2003) (citation omitted).

As noted previously, the version of section 287.110.1 that was in effect from Au-

gust 28, 2005, until December 14, 2005, provided:

> This chapter [287, Workers' Compensation Law] shall apply to all cases within its provisions except those exclusively covered by any federal law and those addressed in section 287.120.

Thus, under the plain and ordinary meaning of this statute, those cases covered by federal law or addressed in section 287.120 are expressly excluded from the Workers' Compensation Law. Read in isolation, the language in the version of section 287.110.1 in effect during this time period is unambiguous. Nevertheless, that does not end the analysis. Because the exclusion of cases in section 287.110.1 incorporates the cases "addressed in section 287.120," the language of section 287.120 must also be examined to determine the legislature's intent.

"Section 287.120 governs the determination of when an injury falls under the Workers' Compensation Law...." *State ex rel. MW Builders, Inc. v. Midkiff*, 222 S.W.3d 267, 270 (Mo. banc 2007). Subsection 1 of section 287.120, provides:

> Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person....

Section 287.120.2, the exclusivity provision, provides:

> The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise,

on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.

Under the plain and ordinary meaning of sections 287.120.1 and .2, the exclusive remedy for personal injury or death of an employee by accident arising in the scope of the employee's employment is workers' compensation.[4] Therefore, section 287.120 defines the universe of cases covered by Missouri's Workers' Compensation Law. Section 287.120 is also unambiguous when read in isolation.

Neither the version of section 287.110.1 in effect from August 28, 2005, through December 14, 2005, nor section 287.120 is ambiguous when read in isolation. When the provisions are read together, however, the conflict between the plain language of the two statutes is obvious. Specifically, reading the two sections together yields the result that Missouri's Workers' Compensation Law would only be applicable to those cases *not* covered by federal law and those cases *not* exclusively falling within the realm of Missouri's Workers' Compensation Law. In other words, the effect of section 287.110.1 during this limited time period would be that Missouri's Workers' Compensation Law is applicable to all cases falling within its provisions, except those cases falling within its provisions. Section 287.110.1 excludes all cases arising under the Workers' Compensation Act from the Workers' Compensation Act, as set forth in section 287.120.1.

▮▮▮ Generally, "[a] provision in a statute must be read in harmony with the entire section." *PDQ Tower Servs., Inc. v.*

*Adams,* 213 S.W.3d 697, 698 (Mo.App. W.D.2007). Statutes relating to the same subject matter are *in pari materia* and should be construed harmoniously. *Id.* This principle "is all the more compelling when the statutes are passed in the same legislative session." *State v. Knapp,* 843 S.W.2d 345, 347 (Mo. banc 1992). Where two statutory provisions covering the same subject matter are unambiguous when read separately but conflict when read together, the reviewing court must attempt to harmonize them and give effect to both. *City of Clinton v. Terra Found., Inc.,* 139 S.W.3d 186, 189 (Mo.App. W.D.2004).

In this case, however, the two statutes are in direct conflict and cannot be harmonized. The language in section 287.110 that "chapter [287] shall apply to all cases within its provisions except ... those addressed in section 287.120" does not lend itself to any other meaning. This language in 287.110, as well as the language of section 287.120, does not permit a construction that limits the application of section 287.110 to fewer than all cases arising under the Workers' Compensation Act.

▮▮▮ When it is impossible to harmonize two conflicting statutory provisions, "[a]s a general rule, a 'chronologically later statute, which functions in a particular way will prevail over an earlier statute of a more general nature, and the latter statute will be regarded as an exception to or qualification of the earlier general statute.'" *Moats v. Pulaski County Sewer Dist. No. I,* 23 S.W.3d 868, 872 (Mo.App. S.D.2000) (citations omitted). "Furthermore, '[w]here one statute deals with a particular subject in a general way,

---

4. Section 287.120 also precludes coverage for intentional self-inflicted injury (subsection 3); increases compensation where the employer fails to comply with any statute in this state (subsection 4); and reduces compensation where the employee fails to use safety devices or follow safety rules provided by the employ-

er (subsection 5), where the employee uses alcohol or nonprescribed controlled drugs in the workplace (subsection 6), or where the employee participates in a voluntary recreational activity (subsection 7). Subsections 8, 9, and 10 of section 287.120 relate to mental injury or stress.

and a second statute treats a part of the same subject in a more detailed way, the more general should give way to the more specific.'" *Id.* (citation omitted).

Here, section 287.110.1 and section 287.120 were amended at the same time, effective August 28, 2005. Thus, neither statute is chronologically later in time. Nevertheless, section 287.110.1, is a general statute, setting forth the cases to which Chapter 287 is applicable. Section 287.120, however, is a more specific statute, setting forth the details of the exclusive rights and remedies of injured employees against their employers. Thus, section 287.120, the more specific statute, would control over section 287.110.1, the more general statute.

This conclusion would be in conflict, however, with another general rule of statutory construction that " 'every word, clause, sentence, and provision of a statute'" must be given effect. *Civil Serv. Comm'n v. Bd. of Aldermen,* 92 S.W.3d 785, 788 (Mo. banc 2003) (quoting *Hyde Park Housing P'ship v. Dir. of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993)). It is " 'presumed that the legislature did not insert idle verbiage or superfluous language in a statute.'" *Id.* (quoting *Hyde Park,* 850 S.W.2d at 84). Under this rule of statutory construction, the phrase within section 287.110.1 "and those addressed in section 287.120" is presumed to have effect.

Despite this rule of statutory construction, a reviewing court must use rules of statutory construction that "subserve rather than subvert legislative intent." *Elrod v. Treasurer of Mo.,* 138 S.W.3d 714, 716 (Mo. banc 2004) (quoting *Kincade v. Treasurer of the State of Mo.,* 92 S.W.3d 310, 311 (Mo.App. E.D.2002)). "All canons of statutory construction are subordinate to the requirement that the court ascertain and apply a statute in a

manner consistent with the legislative intent." *Williams v. Nat'l Cas. Co.,* 132 S.W.3d 244, 249 (Mo. banc 2004) (quoting *Budding v. SSM Healthcare Sys.,* 19 S.W.3d 678, 682 (Mo. banc 2000)). "Construction of statutes should avoid unreasonable or absurd results." *Reichert v. Bd. of Educ. of St. Louis,* 217 S.W.3d 301, 305 (Mo. banc 2007).

The purpose of Missouri's Workers' Compensation Law is "to place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment." *Schoemehl v. Treasurer of State,* 217 S.W.3d 900, 901 (Mo. banc 2007). "The employee, who sustains an injury through an accident arising out of and in the course of employment, is provided certain compensation, without the necessity of having to prove fault on the part of the employer...." *Gunnett v. Girardier Bldg. Realty Co.,* 70 S.W.3d 632, 636 (Mo.App. E.D. 2002). In exchange for an "expeditious and simple means of compensation," *Fisher v. Waste Mgmt. of Mo.,* 58 S.W.3d 523, 527 (Mo. banc 2001), an injured employee "foregoes his right to sue his employer for negligence and to obtain the common-law measure of damages in cases where fault could be shown." *Gunnett,* 70 S.W.3d at 636. As written, with inclusion of the phrase "and those addressed in section 287.120," section 287.110.1 in effect from August 28, 2005, through December 14, 2005, would remove all work-related injuries and deaths from application of the Workers' Compensation Law. The inclusion of this phrase creates an absurd result directly contradictory to the intent of the legislature that the Workers' Compensation Law provides a no-fault, exclusive remedy for injured employees. *Reichert,* 217 S.W.3d at 305.

During oral argument before the court en banc, counsel for Nicholas conceded that such interpretation creates an absurd result. To avoid an absurd result, Nicholas argues that, by adding the phrase "and those addressed in section 287.120," the legislature merely intended to repeal the exclusivity requirement of the Workers' Compensation Act to permit claimants to elect whether to pursue a claim under the Workers' Compensation Act or to file a tort claim against the workers employer. That is not a fair reading of the statutes. There is nothing in the versions of section 287.110 and 287.120 in effect from August 28, 2005, through December 14, 2005, to indicate that the legislature intended to except from the application of Chapter 287 only the provision in section 287.120.2 that the rights and remedies granted in section 287.120.1 are exclusive of all other rights and remedies. The language "and those addressed in section 287.120" incorporates the entirety of section 287.120, not just subsection 2.

■■■■ Moreover, in addition to being in direct conflict with section 287.120 and with the purpose of the Workers' Compensation Law, interpreting section 287.110.1 by its plain and ordinary meaning to exclude workers' compensation cases from the Workers' Compensation Act would render the entirety of the Act meaningless and superfluous. It is presumed that the legislature did not intend a meaningless act. *Missouri ex rel. Bouchard v. Grady*, 86 S.W.3d 121, 123 (Mo.App. E.D.2002). Acting on the presumption that the legislature never intends to enact an absurd law and the principle that the reason of the law should prevail over the letter of the law, courts, "in extreme cases have stricken out words or clauses as improvidently inserted, in order to make all sections of a law harmonize with the plain intent or apparent purpose of the legislature." *City of*

*Joplin v. Joplin Water Works Co.*, 386 S.W.2d 369, 374–75 (Mo.1965). Thus, "[t]o effect the intent of the legislature and to avoid an illogical and absurd result," this court excises the words "and those addressed in section 287.120" from the version of section 287.110.1 in effect from August 28, 2005, through December 14, 2005, "as improvidently included." *Leiser v. City of Wildwood*, 59 S.W.3d 597, 604 (Mo.App. E.D.2001).

■■■■ This conclusion is consistent with the fact that during a special session in September 2005, the legislature changed subsection 1 of section 287.110 back to its original version as first enacted in 1939 and unchanged until the 2005 amendment even though it did so without an emergency clause pursuant to section 1.130(1) to effectuate the amendment immediately upon its approval by the governor. Specifically, during the special session, section 287.110.1 was amended to once again read:

This chapter shall apply to all cases within its provisions except those exclusively covered by any federal law.

When a statute's language is ambiguous or if its plain meaning would lead to an illogical result, extrinsic matters such as the statute's history, surrounding circumstances, and objectives to be accomplished through the statute may be considered. *Cook v. Newman*, 142 S.W.3d 880, 887 (Mo.App. W.D.2004). "Statutory amendments may be used to clarify or restate legislative intent, and subsequent statutes may be considered in construing previously enacted statutes, in order to ascertain the uniform and consistent purpose of the legislature." *Mo. Hosp. Ass'n v. Air Conservation Comm'n*, 874 S.W.2d 380, 398 (Mo.App. W.D.1994) (internal citations omitted). Here, the subsequent amendment of section 287.110.1 during a special session strongly indicates that the inclusion of the phrase "and those addressed in

section 287.120," was unintended and simply a scrivener's error. When subsection 11 of section 287.120 was deleted from Senate Bill 1, the reference to "subsection 11" was properly deleted from subsection 1 of section 287.110. The entire reference to section 287.120, however, was overlooked and erroneously kept in the statute. *See Garza v. Valley Crest Landscape Maint., Inc.,* 224 S.W.3d 61, 65 (Mo.App. E.D.2007) (legislature did not intend that "the 2005 amendment to Section 287.110 should except Section 287.120 from Chapter 287."). The amendment to section 287.110.1 during the special session was merely a drafting error correction. *See e.g., Rosario v. State,* 319 Ark. 764, 894 S.W.2d 888, 890–91 (1995) ("the intent of the General Assembly was to include violations of 5–73–119 as delinquent acts, and that the omission of the language 'or who has violated [section] 5–73–119' in the statutory definition of 'delinquent juvenile' which was enacted in 1989 was a drafting error which was corrected by the 1994 legislation").

Accordingly, the trial court did not err in so construing section 287.110.1 and dismissing Nicholas's petition for lack of subject matter jurisdiction. The trial court's judgment is affirmed.

HOWARD, C.J., LOWENSTEIN, SPINDEN, SMART, NEWTON, HARDWICK, JJ., and MARTIN, S.J. concur.

ELLIS and HOLLIGER, JJ., concur in outcome of majority in separate concurring opinions.

JOSEPH M. ELLIS, Judge, concurring.

I concur in the result reached by the majority, but write separately because I differ on the route taken to get there.

As the majority notes, neither § 287.110.1 nor § 287.120 is ambiguous when read alone. *Maj. Op.* at 107. However, "[c]ourts must read statutes that deal with the same subject matter *in pari materia." State v. Pembleton,* 978 S.W.2d 352, 355 (Mo.App.E.D.1998). When we do so in this case, it becomes abundantly clear that the language of the two sections are in conflict and cannot be harmonized. Therefore, it is incumbent on the court to apply rules of construction to resolve the conflict.

The majority opinion concedes that § 287.120 is a more specific statute than § 287.110.1 in that the former details the exclusive rights and remedies of injured employees against their employers. *Maj. Op.* at 108. "Where one statute deals with a subject in general terms and another deals with the same subject in more specific terms, the two statutes should be harmonized if possible. 'To the extent that this conflict cannot be reconciled, however, the more specific statute prevails over the general statute.'" *Ricketts v. Ricketts,* 113 S.W.3d 255, 258 (Mo.App. W.D.2003) (quoting *Rich v. Peters,* 50 S.W.3d 814, 819 (Mo.App. W.D.2001)) (internal citation omitted). Since § 287.110.1 and § 287.120 cannot be harmonized otherwise, the more specific statute, § 287.120, must prevail.

In my view, this ends the analysis, and we need not address absurd results and the like as the majority opinion finds necessary. The majority does so because it concludes that application of the specific over the general rule of construction would not give effect to every word, clause, and sentence in a statute as required by another rule of construction. *Maj. Op.* at 108. The flaw in the majority's reasoning is that courts frequently are unable to give meaning to every word, clause, and sentence in a statute where two statutes conflict. For example, in *Smith v. Missouri Local Government Employees Retirement System,* 235 S.W.3d 578 (Mo.App. W.D.2007), this Court was confronted with a conflict be-

tween § 452.140, which provides that no assets are exempt from execution for spousal maintenance, and § 70.695, which protects the MOLAGERS fund from any execution other than for child support. *Id.* at 581. We concluded that the two statutes could not be harmonized and that the more specific statute must take precedence over the more general. *Id.* 582. In doing so, we disregarded completely the express language of § 452.140 that "[n]o property shall be exempt from attachment or execution in a proceeding instituted by a person for maintenance, nor from attachment or execution upon a judgment or order issued to enforce a decree for alimony...." *See Id.* at 581–82; *see also Ricketts,* 113 S.W.3d at 258 (disregarding language prohibiting modification of division of marital property in one statute because of more specific authorization of modification of a QDRO in another statute).

Thus, I would give precedence to the more specific statute, § 287.120, and end the discussion at that point, while thereby reaching the same disposition of the instant appeal as does the majority.

Finally, while I share many of the concerns and agree with many of the thoughts expressed by Judge Holliger, I do not wholly concur with all aspects of his opinion. Nevertheless, I would be remiss if I did not say that I find his reconstruction of the events leading up to the legislature's drafting and editing errors compelling. It certainly affirms the appropriateness of the analysis I would utilize to resolve the case and once again reminds us of the great benefit that would be derived if the Missouri General Assembly maintained a legislative history similar to that of United States Congress.

RONALD R. HOLLIGER, Judge, concurring.

I concur in the result only. I write separately because of what may appear to be small but what I believe important differences in philosophy and rationale. The majority opinion at the conclusion of its discussion says that it "excises the phrase" from the original 287.210 adopted in the 2005 regular session. I agree with that holding. The conclusion is inescapable that the inclusion of that phrase was never intended by the legislature given the legislative history outlined by the majority. The majority of courts have recognized their power and duty to disregard, strike or eliminate, or excise words or phrases improvidently placed in legislation. Sutherland Statutory Construction Section 47:37 (2007).

It is a rare, rare power, however and can only be done in the most egregious circumstances and only then to carry out the express legislative intent. Although several Missouri courts have acknowledged the general principle in at least one case, the Missouri Supreme Court has applied it. In *Leibson v. Henry,* 356 Mo. 953, 204 S.W.2d 310 (banc 1947), the legislature addressed language in a 1919 statutory enactment that had picked up unchanged various but not all language from a 1913 version of the same statute. *Id.* at *315.* The court held that some of the language "was simply not deleted" that related to other language that was removed.

Nevertheless, I feel compelled to express some concerns about the approach taken by the majority opinion. Rules of statutory construction are, unfortunately, "necessary evils." Our lodestar in reviewing legislation is and must always be in a system of separate powers, the intent of the legislature expressed through its plain and ordinary language. And despite the judiciary's critics, that language is sometimes neither plain nor ordinary and the intent may be difficult to discern. For obvious reasons we can never look to pub-

lic or private statements by individuals in or out of the legislature about the intent of an enactment. Equally obvious is that we cannot look to our own personal views about that intent.

Once we do so it is a short path to the conclusion that we have the constitutional power to evaluate not only the logic or absurdity of legislative enactments but their reasonableness or wisdom as well. I am not willing to take a step anywhere near that path. Nor have other judges over the past two hundred years. Thus, courts have developed rules of statutory construction to aid us in restraining and not resorting to our own personal views or merely the personal views of all those who have an opinion about legislative intent, including sometimes even individual legislators themselves. But even though called "rules" of construction they are in their truest sense only aids. There are dozens of them. There is no numerical hierarchy for their application. Depending upon the choice and order of application they can even lead to inconsistent, although still "logical" results. And although they solve most problems of legislative interpretation in a satisfactory and acceptable manner based on legal principles in a society of the rule of law and a government of three separate branches they do not, in my opinion, in this case.

My disagreement with the majority opinion is to the extent that it suggests or holds that we can use aids to construction to refuse to enforce unambiguous statutory enactments on the basis that they lead to absurd results. There is no ambiguity in the phrase "and those addressed in section 287.120." I do not believe that the legislature intended the mischief and result that this court is now faced with resolving. I do believe that they made a mistake, doing something accidentally or carelessly that they did not mean to do. The legislature did not intend to repeal the workers compensation law or make it purely voluntary. But if I were to begin basing my decisions on what I believe is "illogical or absurd" in the face of clear language then I have violated my constitutional oath to follow the law as written. I do not suggest that the majority opinion has strictly done so, but I believe that it is susceptible of the reading that courts have power to resolve inconsistencies based on their views of the reasonableness of the enacted language.

It is not constitutionally acceptable in my view for a court to say that what the legislature clearly stated leads to an absurd or illogical result such that the courts have the power to ignore and render meaningless a legislative enactment that is otherwise constitutional. If such a power exists it can be abused and will in every case be subject to someone's complaint that it has been. It makes it too easy to criticize our courts regardless of the political and philosophical spectrum. Following the rules is the principle mechanism that any judge or a court has for avoiding the influence of personal views and biases. A court's job is to protect the rule of law. If the legislature enacts clear language that leads to "absurd or illogical results" the legislative and executive branch must live with their mistake until they can correct it, no matter how painful or difficult to explain that result might be.

Not all rules, however, are so clear and rigid that they properly restrain our role. Such are the rules of statutory construction as the majority applies them in this case. The rules of construction can be manipulated so as to subvert the limits of proper judicial power.

I am not critical of my colleagues. Not even the most partisan advocate really believes that the legislature intended to do what the plaintiff argues the original amendment to section 287.120 does.

That was clearly not the intent of the legislature and that intent can be discerned from what the legislature said and did without resorting to concepts of illogic or absurdity. Neither the pre-existing law nor the original SB I contained a subsection 11 in section 287.120. As originally passed by the Senate there was still no subsection 11 (and consequently no cross-reference in 287.110). While the Senate version was being considered by a House committee a version of subsection 11 was added as well as the cross-reference in section 287.110 ("and those addressed in subsection 11 of section 287.120"). When the House Committee Substitute reached the House floor for debate Amendment 11 was offered and adopted. Amendment 11 deleted certain lines of the committee version of subsection 11 and inserted different language. The amendment also called for the amendment of all "intersectional references." That is an apparent reference to cross references to subsection 11. After House action was completed neither the Senate nor the House would concede to the other's position so a conference committee was appointed. During the conference committee the version of subsection 11 adopted on the House floor was deleted. Obviously during the editing process the phrase "subsection 11" was removed from the last clause as well. It is an inescapable conclusion that the editing process failed to notice the last clause in section 287.110 had been added when the House Committee wrote the first version of subsection 11. In effect, the editing removed House Amendment 11 without noticing its relationship to the original version of subsection 11 which had added the clause in question to section 287.110. Those words in the last clause of section 287.110 which were ultimately adopted had no purpose except as a cross reference to the now removed subsection 11 of 287.120.[1] Most simply said, a drafting and editing error occurred. That to me should be the end of our analysis.

---

1. This chain of events appears from a review of the various versions of SB1 and the House and Senate Journals as they moved through the legislative process. There is no journal record of specific actions taken by regular committees or the conference committee except their final result.