Robin WRIGHT–JONES, Respondent,

v.

Connie L. JOHNSON, Appellant.

No. ED 91368.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 18, 2008.

Darold E. Crotzer, Jr., Amy J. White, Clayton, MO, for Respondent.

Rufus J. Tate, Jr., Clayton, MO, Anthony D. Gray, Saint Louis, MO, for Appellant.

Before ROY L. RICHTER, P.J., GLENN A. NORTON, J. and KENNETH M. ROMINES, J.

## *OPINION*

PER CURIAM.

Connie L. Johnson appeals the trial court's judgment in favor of Robin Wright–Jones on Wright–Jones's petition challenging Johnson's qualifications for nomination to the office of state senator for the 5th district, and requesting that Johnson's name be removed from the August 2008 primary election ballot. Johnson also appeals the trial court's judgment in favor of Wright–Jones on Johnson's counterclaims, which sought a declaration that Johnson is qualified to be a candidate for the 5th senatorial district (Count I), and alleged that Johnson's property and liberty interests were violated (Count II). We affirm.

### I. BACKGROUND

Johnson and Wright–Jones each filed a declaration of candidacy for the Democratic nomination to the office of state senator for the 5th district, which is located in the City of St. Louis. Thereafter, on April 22, 2008, Wright–Jones filed a petition challenging Johnson's qualifications for nomination to the office on the

basis that Johnson did not reside in the district in November 2007.[1] In her petition, Wright–Jones requested that Johnson's name be removed from the August 2008 primary election ballot. Additionally, Wright–Jones prayed that the court "set th[e] matter for hearing so that she may leave to produce proof of [Johnson's] failure to meet the residency requirements."

On April 23, 2008, Wright–Jones filed a motion to set a hearing on her petition "at [a] reasonable time for discovery to be accomplished." On that same date, Johnson objected to the trial court holding a hearing on Wright–Jones's petition later than April 29, 2008, on the grounds that section 115.531 RSMo Supp.2008 [2] required the court to hear the petition within five days of being filed. Thereafter, the trial court ruled all discovery should be completed by May 8, 2008, and set Wright–Jones's petition for trial on May 9, 2008.

Johnson filed an answer and two counterclaims to Wright–Jones's petition on April 28, 2008. Count I, a request for declaratory judgment, sought a declaration that Johnson is qualified to be a candidate for the 5th senatorial district. Count II alleged that Johnson's property and liberty interests were violated because: (1) Johnson is qualified to be a candidate for the 5th senatorial district; and (2) the trial court failed to hear Wright–Jones's petition within five days of being filed in accordance with section 115.531. On May 2, 2008, the trial court entered an order ruling that it would "not hear or consider or rule on [Johnson's] counter-claims until some time after [the] parties have had time to fully reply to the claims and have reasonable time to conduct discovery."

Johnson filed a motion requesting findings of fact and conclusions of law pursuant to Rule 73.01(c).[3] The trial court held a bench trial on Wright–Jones's petition on May 9, 2008.

On May 15, 2008, the trial court entered its findings of fact, conclusions of law, and judgment in favor of Wright–Jones. First, based on the evidentiary record,[4] which Johnson did not contest, the trial court found that Johnson was not a resident of the 5th senatorial district in November 2007. Thus, the court concluded that Johnson is not qualified to be a candidate for nomination to the office of senator for the 5th district pursuant to section 21.070 because she was not a resident of the district for one year immediately prior to the November 2008 general election. The court ruled that, "[Johnson's] name shall not be printed on the official ballot." Secondly, the trial court addressed Johnson's argument that the court lacked subject matter jurisdiction over Wright–Jones's petition because it failed to hold a preliminary hearing within five days of the petition being filed in accordance with section 115.531. The trial court reasoned that Johnson's jurisdictional argument lacked merit because:

> [T]he instant suit is a challenge to [Johnson's] qualifications, as authorized by Section 115.526, and not a suit contesting the results of a primary election under Section 115.531. This distinction

1. The petition did not allege the specific residency requirements for candidacy for the office of state senate. However, we note that section 21.070 RSMo Supp.2008 provides that: "Each senator ... next before the day of his election shall have been ... a resident of the district which he is chosen to represent for one year...."

2. All statutory references are to RSMo Supp. 2008 unless otherwise indicated.

3. All references to Rules are to Missouri Supreme Court Rules (2008).

4. Johnson has failed to file the evidentiary record, i.e. transcript, with this Court.

was deemed critical in *Dally v. Butler*, 972 S.W.2d 603, 607 (Mo.App. S.D.1998). None of the cases relied upon by [Johnson] stand for the proposition that the procedures in Section 115.531, dealing with the contest of the results of a primary election, are applicable to a challenge to the qualifications of a candidate, as provided in Section 115.526.

Finally, the court denied Johnson's counterclaims on the grounds that they were moot in light of its rulings on Johnson's qualifications and Johnson's jurisdictional argument. Johnson appeals.

## II. DISCUSSION

### A. Standard of Review

Our review of a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This Court will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* We defer to the trial court's findings of facts because of its superior ability to assess the credibility of witnesses. *Sheppard v. East*, 192 S.W.3d 518, 522 (Mo.App. E.D.2006). However, we review questions of law *de novo*. *Id.*

### B. The Trial Court had Subject Matter Jurisdiction and Statutory Authority to Hear and Enter Judgment on Wright–Jones's Petition

In her first, second, third, and fifth points on appeal, Johnson asserts that the trial court did not have subject matter jurisdiction and statutory authority to hear and enter judgment on Wright–Jones's petition challenging Johnson's qualifications. In those points, Johnson alleges that the trial court did not have subject matter jurisdiction and statutory authority to hear and enter judgment on Wright–Jones's petition after the passage of five days from the date it was filed.

### 1. The Election Contest Statutes Govern the Trial Court's Subject Matter Jurisdiction and Proceedings Over Wright–Jones's Petition Brought Pursuant to Section 115.526

█ As an initial matter, we note that the right to contest an election is conferred by statute only; it is not a common law or equitable right. *Missouri ex rel. Bouchard v. Grady*, 86 S.W.3d 121, 123 (Mo. App. E.D.2002). Sections 115.526 to 115.601 govern election contests ("election contest statutes"). Under the election contest statutes, primary election contests can take three forms. First, before a primary election is held, the election may be contested on the basis of a candidate's qualifications for nomination to office under section 115.526. *See* Section 115.575.1 (providing that "all contested elections" include elections "contested on the basis of qualification"). Wright–Jones's petition challenging Johnson's qualifications for nomination to the office of state senator for the 5th district is this type of primary election contest. Secondly, after an election is held, the returns or results may be contested on the grounds that irregularities occurred in the election pursuant to sections 115.527, 115.531, or 115.553. Finally, section 115.601.1 provides that after an election is held, a contestant who was defeated by less than one percent of the votes cast "shall have the right to a recount of the votes cast for the office . . . ."

█ A party seeking relief pursuant to one of the election contest statutes must bring herself strictly within its terms. *Dally v. Butler*, 972 S.W.2d 603, 608 (Mo. App. S.D.1998). Strict compliance with the election contest statutes is necessary to confer subject matter jurisdiction upon the trial court. *Hockemeier v. Berra*, 641 S.W.2d 67, 69 (Mo. banc 1982); *State ex rel. Wilson v. Hart*, 583 S.W.2d 550, 551

(Mo.App. E.D.1979). Once a trial court has subject matter jurisdiction over a party's petition, the court may only grant relief that is specifically authorized by the election contest statutes. *Missouri ex rel. Bouchard,* 86 S.W.3d at 123. Accordingly, the election contest statutes govern the trial court's subject matter jurisdiction and proceedings over Wright–Jones's petition brought pursuant to section 115.526.

## 2. Our Review of the Election Contest Statutes Involves Statutory Construction and Questions of Law

Because the facts are uncontested in this case, whether the election contest statutes conferred subject matter jurisdiction upon the trial court involves statutory construction, and is a question of law that we review *de novo. See Powell v. State Farm Mutual Automobile Insurance Co.,* 245 S.W.3d 864, 865 (Mo.App. E.D.2008); *Garza v. Valley Crest Landscape Maintenance, Inc.,* 224 S.W.3d 61, 64 (Mo.App. E.D.2007). Whether the election contest statutes authorized the trial court's proceedings over Wright–Jones's petition brought pursuant to section 115.526 also involves statutory construction, and is a question of law that we review *de novo. See Garza,* 224 S.W.3d at 64.

The primary rule of statutory construction is to determine the intent of the legislature from the language used and give effect to that intent. *Missouri ex rel. Bouchard,* 86 S.W.3d at 123. The words used are given their plain and ordinary meaning. *Id.* We construe statutes in such a way as to avoid unreasonable, oppressive, or absurd results. *Id.* "The entire legislative act must be construed together, and if reasonably possible, all provisions must be harmonized." *Id.*

## 3. The Election Contest Statutes Conferred Subject Matter Jurisdiction upon the Trial Court to Entertain Wright–Jones's Petition Brought Pursuant to Section 115.526

██ In her first point on appeal, Johnson maintains that the election contest statutes did not confer subject matter jurisdiction upon the trial court to entertain Wright–Jones's petition because the court failed to hear Wright–Jones's petition within five days of it being filed, i.e. within five days after April 22, 2008, in accordance with section 115.531. We disagree.

### a. An Appropriate Circuit Court has Subject Matter Jurisdiction to Hear and Enter Judgment on Wright–Jones's Petition

Because Wright–Jones brought her petition pursuant to section 115.526, we first look to the terms of that statute. Section 115.526.1 provides in relevant part that:

> Any candidate for nomination to an office at a primary election may challenge the declaration of candidacy or qualifications of any other candidate for nomination to the same office to seek or hold such office, or to have his name printed on the ballot. . . . Except as provided in sections 115.563 to 115.573,[5] challenges shall be made by *filing a verified petition with the appropriate court as is provided for in [the] case of a contest of election for such office in sections 115.527 to 115.601.* (emphasis added).

Section 115.526.3 states in pertinent part that: "The procedure in such matters shall be the same as that provided in sections 115.527 to 115.601, *to the extent that it is applicable and not in conflict with the*

---

**5.** Sections 115.563 to 115.573 relate to general election contests for the office of state senator or state representative and to contests based on the qualifications for the office of state senator or state representative which have not been adjudicated prior to the general election.

*provisions of this section.*" (emphasis added).

Next, we look to the language in section 115.529, which provides that: "Circuit courts shall have jurisdiction to hear and determine all primary election contests." As we discussed above, Wright–Jones's petition challenging Johnson's qualifications for nomination to the office of state senator for the 5th district is a primary election contest. Harmonizing sections 115.526.1, 115.526.3, and 115.529 indicates that an appropriate circuit court, as is provided for in sections 115.527 to 115.601, has subject matter jurisdiction to hear and determine Wright–Jones's petition to the extent that the procedure is applicable and not in conflict with section 115.526.

**b. The Circuit Court of the City of St. Louis was the Appropriate Court to Hear and Enter Judgment on Wright–Jones's Petition**

Sections 115.527 to 115.601 guide us in determining the meaning of the language "appropriate court" as the term is set forth in section 115.526.1, keeping in mind that the statutory procedure we use must be applicable, not in conflict with, and related to section 115.526. *See* section 115.526.3, *supra; Marre v. Reed,* 775 S.W.2d 951, 953 (Mo. banc 1989) (stating that "[r]elated clauses are to be considered when construing a particular portion of a statute"). Sections 115.531.1 and 115.575 discuss the appropriate court in which to file a petition contesting a primary election. Johnson contends that section 115.531.1 is applicable to Wright–Jones's petition. It states in pertinent part that:

Not later than five days after the official announcement of the results of a primary election is issued by the election authority or the secretary of state ... any candidate desiring to contest the primary election shall file a verified petition *in the office of the clerk of the*

*circuit court of any circuit in which part of the election was held and in which any alleged irregularity occurred* .... The judge of the court shall immediately note on the petition the date it was filed and shall immediately set a date, not later than five days after the petition is filed, for a preliminary hearing.

Section 115.531.1 (emphasis added).

Johnson maintains that section 115.531.1 not only determines the meaning of the language of "appropriate court" as the term is set forth in section 115.526.1, but that it also requires a trial court to hold a preliminary hearing not later than five days after the filing of a section 115.526 petition challenging the qualifications of a candidate for nomination to an office. Johnson further contends that because the trial court in this case failed to hold a preliminary hearing within five days of the filing of Wright–Jones's petition, it lost subject matter jurisdiction over her petition and could not hear her petition at a later date.

■ Johnson's claims in this regard are incorrect. The plain and ordinary meaning of the language used in section 115.531.1 and case law demonstrates that section 115.531.1 and its procedures are not applicable or related to a primary election contest brought before an election is held on the basis of a candidate's qualifications for nomination to office under section 115.526. The first sentence of section 115.531.1 states in relevant part that: "Not later than five days *after the official announcement of the results* of a primary election is issued ... any candidate desiring to contest the primary election shall file a verified petition ...." (emphasis added). We find that, based on this language, section 115.531.1 and its procedure applies and relates only to primary election contests brought after an election is

held. *See also Reeves v. Bockman,* 101 S.W.3d 280, 284–286 (Mo.App. S.D.2002) (finding that the appropriate circuit court for a section 115.601 suit seeking a recount of the votes cast in a primary election for a party's nomination for associate circuit judge is found in section 115.531.1). Accordingly, section 115.531.1 and its procedure does not apply or relate to a primary election contest brought before an election is held on the basis of a candidate's qualifications for nomination to office under section 115.526. Moreover, two cases from the Southern District of this Court have indicated that: (1) section 115.531.1 *is not* applicable or related to a section 115.526 suit challenging the qualifications of a candidate for nomination in a primary election; and (2) section 115.575 *is* applicable to and related to a section 115.526 suit challenging the qualifications of a candidate. *See Dally,* 972 S.W.2d at 606–07 (holding that the appropriate circuit court for a section 115.526 suit challenging the qualifications of a candidate for a circuit judge election was found in section 115.575.1, and not section 115.531.1); *Chowning v. Magness,* 792 S.W.2d 438, 439 n. 3 (Mo.App. S.D.1990) (taking judicial notice, for purposes of the appeal, that the appropriate court to file a section 115.526 suit challenging the qualifications of a candidate for circuit judge was found in section 115.575.1).

Section 115.575 is titled: "Contests for office of circuit judge, where heard—other contests, where heard." Section 115.575.1 applies to contests for office of circuit or associate circuit judge and section 115.575.2 applies to other contests. Section 115.575.2 provides in relevant part that:

> All contested elections on any office or question other than those provided for in sections 115.555, 115.563 and subsection 1 of this section [6] shall be heard and determined by the circuit court of any circuit ... in which all or any part of the election was held and in which any alleged irregularity occurred.

As previously noted, section 115.575.1 provides that the language "all contested elections" includes those "contested on the basis of qualification." Construing sections 115.575.1 and 115.575.2 together demonstrates that section 115.575.2 is applicable and related to Wright–Jones's qualifications challenge brought pursuant to section 115.526. Thus, we hold that section 115.575.2 determines the meaning of the language "appropriate court" as that term is set forth in section 115.526.

The language of sections 115.575.1 and 115.575.2 provides that all contests, including those on the basis of qualification, shall be heard and determined by the circuit court of any circuit in which all or any part of the election was held and in which the alleged irregularity occurred. Although the language of section 115.575.2 indicates that a contested election shall be heard and determined by a circuit court where the election *was held,* we find that the legislature intended that a section 115.526 qualifications challenge, which takes place before an election is held, shall be heard and determined by a circuit court where the election *will be held.* The entire 5th senatorial district is located in the City of St. Louis. Accordingly, Wright–Jones's petition brought pursuant to section

---

**6.** Section 115.555 relates to contests for state offices. Section 115.563 pertains to general election contests for the office of state senator or state representative and to contests based on the qualifications for the office of state senator or state representative which have not been adjudicated prior to the general election. Section 115.575.1 involves contested elections "for the office of circuit or associate circuit judge not subject to the provisions of article V, section 25 of the state constitution."

115.526 was properly heard and determined by the circuit court of the City of St. Louis.

### c. Conclusion as to Subject Matter Jurisdiction

We hold that when sections 115.526.1, 115.526.3, 115.529, 115.575.1, and 115.575.2 of the election contest statutes are construed together, they provide that the circuit court of the City of St. Louis had subject matter jurisdiction to hear and determine Wright–Jones's section 115.526 petition. Point one is denied.

### 4. The Election Contest Statutes Authorized the Trial Court to Hold Proceedings on Wright–Jones's Qualifications Challenge Petition

In her second, third, and fifth points on appeal, Johnson contends that the election contest statutes did not authorize the trial court to hold proceedings on Wright–Jones's petition. In her second and third points, Johnson maintains that the trial court did not have statutory authority to set or hold a trial on Wright–Jones's petition on May 9, 2008. In her fifth point, Johnson maintains that the trial court did not have statutory authority to enter its judgment after the trial.

Johnson's arguments largely center on the contention in her first point on appeal that the trial court did not have subject matter jurisdiction. Johnson maintains that, because the trial court never had subject matter jurisdiction over Wright–Jones's petition, all of the trial court's subsequent actions and proceedings are null and void. While it is true that "[a]ny actions or proceedings of a court without subject matter jurisdiction are null and void," *Wells v. Noldon,* 679 S.W.2d 889, 891 (Mo.App. E.D.1984), the trial court did have subject matter jurisdiction over Wright–Jones's petition pursuant to sections 115.526.1, 115.526.3, 115.529, 115.575.1, and 115.575.2 as explained above. Moreover, as discussed below, the trial court had statutory authority to set and hold a trial on May 9, 2008, and subsequently enter its judgment in favor of Wright–Jones on her petition.

### a. Section 115.581 of the Election Contest Statutes Authorized the Trial Court to Set and Hold a Trial on Wright–Jones's Petition on May 9, 2008

As noted above, Johnson argues in her second and third points on appeal that the trial court did not have statutory authority to set or hold a trial on Wright–Jones's petition on May 9, 2008. We disagree.

We initially note that the relevant trial court proceedings that took place prior to the court's judgment are as follows: (1) Wright–Jones filed her petition challenging Johnson's qualifications for 5th district state senate candidacy on April 22, 2008, praying that the court would "set th[e] matter for hearing so that she may leave to produce proof of [Johnson's] failure to meet the residency requirements;" (2) on April 23, 2008, Wright–Jones filed a motion to set a hearing on her petition "at [a] reasonable time for discovery to be accomplished;" (3) on April 28, 2008, Johnson filed her answer to Wright–Jones's petition; (4) thereafter, the trial court ruled that the all discovery should be completed by May 8, 2008, and set Wright–Jones's petition for trial on May 9, 2008; and (5) on May 9, 2008, the trial court held a bench trial on Wright–Jones's petition.

In order to determine whether the trial court had statutory authority to set or hold a trial on Wright–Jones's petition on May 9, 2008, we must look to the plain and ordinary meaning of section 115.581.

Section 115.581 states in pertinent part that: "Immediately upon the filing of a petition and answer . . . the court shall proceed to try the case. . . ." Because the

term "immediately" is not defined by the election contest statutes, we must look to the plain and ordinary meaning of the word as it is found in the dictionary. *See In re Care and Treatment of Coffman,* 225 S.W.3d 439, 444 (Mo. banc 2007) (finding a statutory term that is not defined by the legislature is given its plain and ordinary meaning as found in the dictionary). The term "immediately" is defined as "without delay." *Webster's Third International Dictionary* 1129 (1976). In order to apply this definition to the facts in this case, it must be viewed in the context of the surrounding language contained in section 115.581.

For example, in *State ex rel Wilson,* this Court examined the term "immediately" in the context of section 115.533(1) RSMo Supp.1977, which provided in relevant part that: "Immediately after a petition is filed, the clerk of the circuit court, shall issue a summons upon the petition to the contestee...." 583 S.W.2d at 551–52. We construed the term "immediately," as the word was used in section 115.533(1) RSMo Supp.1977, to mean "the same day on which the petition is filed." *Id.* at 552. In the context of an issuance of a summons, there was no reason for any delay.

The context of the surrounding language of the statute at issue in this case, section 115.581, is different than the surrounding language of section 115.533(1). As set out above, section 115.581 states in pertinent part that: "Immediately upon the filing of a petition and answer ... the court shall proceed to try the case...." Because the term "proceed" is not defined by the election contest statutes, we must look to the plain and ordinary meaning of the word as it is found in the dictionary. *See In re Care and Treatment of Coffman, supra.* The term "proceed" is defined as "to move along on a particular course or in a particular way or direction or toward a particu-lar thing." *Webster's Third International Dictionary* 1807 (1976). In order for the trial court to move the case toward trial, discovery was necessary. Because Johnson's petition prayed "leave to produce proof" in support of her challenge to Johnson's qualifications, sections 115.526.1 and 115.599 authorized Johnson to engage in discovery in this case. Section 115.526.1 (stating in relevant part that a petition challenging the qualifications of a candidate for nomination "shall set forth the points on which the challenger wishes to challenge the ... qualifications of the candidate and the facts he will prove in support of such points, and *shall pray leave to produce his proof"* (emphasis added)); Section 115.599 (stating in pertinent part that "[i]n all cases of contested elections, primary and other, the [parties] shall be allowed process for witnesses, and either party may take depositions ... as is authorized in civil cases"). In light of the necessity of discovery, we find that the trial court immediately proceeded to try the case pursuant to section 115.581. We also find that section 115.581 authorized the trial court to set and hold a trial on Wright–Jones's petition on May 9, 2008. Points two and three are denied.

**b. Section 115.545 of the Election Contest Statutes Authorized the Trial Court to Enter a Judgment on Wright–Jones's Petition After the Trial**

As previously noted, Johnson asserts in her fifth point on appeal that the trial court did not have statutory authority to enter its judgment on Wright–Jones's petition after the trial. Section 115.545 states in pertinent part that: "Upon completion of the procedures provided for in this subchapter, the court shall render its judgment based upon the issues of law and fact...." After it tried the case, the trial court was authorized by the plain and ordinary meaning of section 115.545 to enter

its judgment on Wright–Jones's petition. Point five is denied.

## C. We Defer to the Trial Court's Factual Finding that Johnson was not a Resident of the 5th Senatorial District in November 2007

In her sixth point on appeal, Johnson alleges that the trial court erred in finding that she was not a resident of the 5th senatorial district in November 2007. Whether a candidate is a resident for the purpose of determining if she is qualified to run for an office is a question of fact. *State ex rel. King v. Walsh*, 484 S.W.2d 641, 644 (Mo. banc 1972). As noted above under our discussion of our standard of review, we defer to the trial court's findings of fact because of the trial court's superior ability to assess the credibility of witnesses. *Sheppard*, 192 S.W.3d at 522. Because we defer to the trial court's findings of fact, and because Johnson has failed to provide our Court with a transcript of the trial, Johnson's argument that the trial court erred in finding that she was not a resident of the 5th senatorial district in November 2007 lacks merit. Point six is denied.

## D. The Trial Court did not Err in Severing and Denying Johnson's Counterclaims

In her fourth point on appeal, Johnson asserts that the trial court erred in severing and in denying Johnson's counterclaims. Johnson's counterclaims sought a declaration that she is qualified to be a candidate for the 5th senatorial district (Count I), and alleged that her property and liberty interests were violated (Count II). The trial court entered an order ruling that it would "not hear or consider or rule on [Johnson's] counter-claims until some time after [the] parties have had time to fully reply to the claims and have

reasonable time to conduct discovery," effectively severing Johnson's counterclaims. Thereafter, the trial court denied Johnson's counterclaims on the grounds that they were moot in light of its rulings regarding Johnson's qualifications and Johnson's jurisdictional argument.

### 1. Johnson has Failed to Demonstrate that the Trial Court Erred in Severing her Counterclaims and that she was Prejudiced by the Trial Court's Ruling

Rule 66.02 provides that a trial court "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, *may* order a separate trial of any . . . counterclaim." (emphasis added). A trial court's decision to sever a counterclaim will not be disturbed unless it is found that an abuse of discretion occurred. *State ex rel. M.D.K. v. Dolan*, 968 S.W.2d 740, 745 (Mo.App. E.D.1998). An abuse of discretion is found when the trial court's ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice." *Id.* (internal quotation omitted). To obtain relief on appeal, a party must demonstrate that the trial court erred, and that she was prejudiced by the trial court's ruling. *State ex rel. Goodman v. St. Louis Board of Police Commissioners*, 181 S.W.3d 156, 160 (Mo.App. E.D.2005).

Johnson has failed to demonstrate how the trial court abused its discretion in severing her counterclaims. Moreover, Johnson has failed to demonstrate that she was prejudiced by the trial court's severance of her counterclaims. Accordingly, we find that Johnson's argument that the trial court erred in severing her counterclaims is without merit.

### 2. Johnson's Counterclaims were Moot in Light of the Trial Court's Other Findings

"Where an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed." *Elton v. Davis,* 123 S.W.3d 205, 214 (Mo.App. W.D. 2003). Once the trial court found that Johnson is not qualified to be a candidate for nomination to the office of senator for the 5th district, and found that it had subject matter jurisdiction over Wright–Jones's petition, a decision on the merits of Johnson's counterclaims, which were based on these two issues, was unnecessary. Thus, the trial court did not err in denying Johnson's counterclaims on the basis that they were moot.

**3. Conclusion as to the Trial Court's Rulings on Johnson's Counterclaims**

Point four is denied.

### III.  CONCLUSION

The judgment is affirmed.