Dear Auditor Montee and Senator Bartle:
You submitted similar requests for an Attorney General opinion concerning the date for setting ad valorem property tax rates under § 67.110.1, RSMo Cum. Supp. 2008.[1] Section 67.110.1, RSMo, provides, in part, as follows:
 Each political subdivision in the state, except counties and any political subdivision located at least partially within any county with a charter form of government or any political subdivision located at least partially within any city not within a county, shall fix its ad valorem property tax rates as provided in this section not later than September first for entry in the tax books. Each political subdivision located, at *Page 2 
least partially, within a county with a charter form of government or within a city not within a county shall fix its ad valorem property tax rates as provided in this section not later than October first for entry in the tax books for each calendar year after December 31, 2008.
There are four charter counties in Missouri: St. Louis County, Jackson County, St. Charles County, and Jefferson County. In addition, there is one city not within a county: the City of St. Louis. Thus, in accordance with the first two sentences of § 67.110.1, political subdivisions in the state, such as school districts, see Lane v.Lensmeyer, 158 S.W.3d 218, 226 (Mo. banc 2005), that are located at least partially within the four charter counties and the City of St. Louis, "shall" fix their ad valorem property tax rates no later than October 1. For example, the Lee's Summit School District is at least partially within a charter county — Jackson County — and based on the first two sentences of § 67.110.1 would have until October 1 to fix its ad valorem property tax rates. All other political subdivisions in the state, except counties, are required by the first two sentences of § 67.110.1 to fix their ad valorem property tax rates by September 1.
Prior to amendments in 2008, § 67.110.1 provided that all political subdivisions of the state, except counties, were required to fix their ad valorem property tax rates no later than September 1. Section 67.110.1, RSMo 2000. This remains true for the great bulk of political subdivisions in the state following amendments to the statute in 2008. While the 2008 amendments to the statute changed the date for certain political subdivisions, the last sentence of § 67.110.1, which sets forth a consequence for failing to timely fix ad valorem property tax rates, remains the same:
 Should any political subdivision whose taxes are collected by the county collector of revenue fail to fix its ad valorem property tax rate by September first, then no tax rate other than the rate, if any, necessary to pay the interest and principal on any outstanding bonds shall be certified for that year.
Section 67.110.1. This sentence does not expressly address the October 1 deadline for certain political subdivisions found in the first two sentences of § 67.110.1. Thus, it is necessary to determine if there is a conflict and, if so, then to resolve it using the tools of statutory construction. *Page 3 
The general rule of statutory construction is to ascertain the "intent of the legislature based on the plain language used and to give effect to this intent whenever possible." Soto v. State,226 S.W.3d 164, 166 (Mo. banc 2007). To do that, an examination is made of "the words used in the statute, the context in which the words are used, and the problem the legislature sought to remedy by the statute's enactment." Id. And to the extent there is a conflict in the statutory language, it is requisite to attempt to read the provisions of the statute in harmony so as to avoid a conflict. Anderson ex rel. Anderson v. Ken Kauffman SonsExcavating, L.L.C., 248 S.W.3d 101, 107 (Mo. App. W.D. 2008).
It is evident from the first two sentences of § 67.110.1, that the legislature intended that certain political subdivisions should have until October 1 to fix their ad valorem tax rates. Yet, the last sentence of § 67.110.1, which is a holdover from before the 2008 amendments, seems to subject all political subdivisions to a consequence if they do not meet the September 1 deadline. There is one qualification in the last sentence, however, that must be addressed — the consequence for failing to meet the September 1 deadline applies only to those political subdivisions "whose taxes are collected by the county collector of revenue." Section 67.110.1. In charter counties, as well as the City of St. Louis, taxes are not necessarily collected by "the county collector." Indeed, in at least Jackson County, St. Louis County, and the City of St. Louis, there is no "county collector" at all. Instead, they have nonelected department heads over revenue and collections. This would suggest a possible way to read the provisions so as to avoid conflict for some counties. Nevertheless, there remain at least two conflicts in the statute.
First, St. Charles County and Jefferson County provide for the election of "county collectors" as part of their charter form of government. Therefore, the conflict is not resolved for those charter counties. Second, the first two sentences make clear that a political subdivision need only be "partially within any county with a charter form of government" in order to qualify for the October 1 deadline. Section 67.110.1. Lee's Summit School District is just such a political subdivision since it is not entirely within Jackson County, and therefore some of its tax revenue is collected by a "county collector." To suggest that a political subdivision such as Lee's Summit School District, which is located only partially within a charter county or the City of St. Louis, should be subjected to two deadlines for fixing tax rates would create an unwieldy process that is not consistent with § 67.110.1. Thus, there remain at least two conflicts in § 67.110.1.
Because § 67.110.1 was repealed and re-enacted in 2008, the canon of statutory construction that provides that "the later-enacted provision, . . . repeals the first statute to *Page 4 
the extent of any conflict with the second" does not apply.Turner v. State, 245 S.W.3d 826, 829 (Mo. banc 2008). This leaves us to harmonize the provisions and avoid making statutory language superfluous. Civil Serv. Comm'n of the City of St. Louisv. Members of the Bd. of Aldermen of the City of St. Louis,92 S.W.3d 785, 788 (Mo. banc 2003) (holding that it is "presumed that the legislature did not insert idle verbiage or superfluous language in a statute"); Anderson, 248 S.W.3d at 107.
If the last sentence of § 67.110.1 is held to control the first two sentences, then it would make the first two sentences permitting the fixing of ad valorem property tax rates by October 1 superfluous. Thus, the last sentence of § 67.110.1 must be read to incorporate the specific time frames in the first two sentences in order to harmonize the provisions. As such, a political subdivision that is located partially within a charter county or the City of St.Louis, such as the Lee's Summit School District, should only be subject to the consequences of the last sentence of § 67.110.1 if it fails to fix "its ad valorem property tax rate by [October] first." Section 67.110.1. This reading gives meaning to all the statutory language and avoids reading provisions as superfluous.
 CONCLUSION
The 2008 amendments to § 67.110.1 should be read in harmony with the entire statute such that political subdivisions in the state that are located at least partially within a charter county or the City of St. Louis, have until October 1 to fix ad valorem property tax rates without fear of having a tax rate certified that is only necessary to pay the interest and principal on any outstanding bonds.
The 2008 amendments to § 67.110.1 should be read in harmony with the entire statute such that political subdivisions in the state that are located at least partially within a charter county or the City of St. Louis, have until October 1 to fix ad valorem property tax rates without fear of having a tax rate certified that is only necessary to pay the interest and principal on any outstanding bonds.
We are indexing the opinion under the heading:
 Fix Ad Valorem Property Tax Rates Political Subdivisions Property Tax Taxation — Tax Rate
 Very truly yours,
 CHRIS KOSTER Attorney General
[1] Unless otherwise specified, all references in this opinion to the Revised Missouri Statutes will be to the 2008 Cumulative Supplement.