

# Missouri Court of Appeals

## Southern District

### Division One

LISA COFFER, )
     )
    Claimant-Appellant, )
     )
    vs. )     No. SD36471
     )
TREASURER OF THE STATE OF )     Filed: April 14, 2020
MISSOURI AS CUSTODIAN OF THE )
SECOND INJURY FUND, )
     )
    Respondent-Respondent. )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**<u>REVERSED AND REMANDED</u>**

An administrative law judge ("ALJ") awarded Lisa Coffer ("Claimant") permanent total disability benefits against the Treasurer of the State of Missouri as Custodian of the Second Injury Fund (the "Treasurer") under section 287.220.2, as amended in 2013 and effective January 1, 2014. The award was attributable to bilateral carpal tunnel syndrome (an occupational disease arising out of and in the scope of Claimant's employment) that prevented her from working beginning December 13, 2013, in combination with multiple previous disabilities due to earlier unrelated injuries.

Claimant filed a claim for the bilateral carpal tunnel syndrome against the Treasurer in November 2014.

The Labor and Industrial Relations Commission (the "Commission") reversed the ALJ's award on the ground that section 287.220.3(1) applied to Claimant's claim rather than section 287.220.2 as a matter of statutory interpretation because (1) Claimant's claim was for an occupational disease and the claim was filed after January 1, 2014, and (2) there was no evidence presented to the ALJ that showed any of Claimant's multiple previous disabilities met the requirements of section 287.220.3(2). Claimant appeals claiming that subsection 2 applies to her claim as a matter of law. The Treasurer does not challenge any fact relevant to the resolution of this claim on appeal. We reverse the Commission's decision because, consistent with the Eastern and Western Districts of this Court, we believe the Supreme Court of Missouri resolved the conflict between subsections 2 and 3 of section 287.220 in *Cosby v. Treasurer of the State of Missouri as Custodian of the Second Injury Fund*, 579 S.W.3d 202 (Mo. banc 2019), and that resolution requires the application of subsection 2 to Claimant's claim rather than subsection 3.[1]

---

[1] Claimant also raises a second point on appeal in which Claimant asserts that the Commission "failed to reconcile the conflicting language" in other statutory provisions relating to the statute of limitations for claims against the Treasurer. In light of our resolution of Claimant's first point in her favor, we do not reach Claimant's second point. In a motion to transfer the appeal to our Supreme Court pursuant to its exclusive appellate jurisdiction, the Treasurer asserted that Claimant's second point presented a real and substantial challenge that section 287.220.3 was invalid because it violates the Missouri constitution. Our view that the Supreme Court's decision in *Cosby* provides a definitive interpretation of subsections 2 and 3 of section 287.220, and determined that the employee-claimant "failed to prove section 287.220" as so interpreted "violates his constitutional rights" (*Cosby*, 579 S.W.3d at 210, 208-10), renders any challenge to the constitutional validity of section 287.220.2 and .3 contained in Claimant's second point merely colorable and not real and substantial (even assuming any such challenge properly was preserved for appellate review). As a result, we deny the Treasurer's motion to transfer the appeal to the Supreme Court pursuant to its exclusive appellate jurisdiction.

**Standard of Review**

Pursuant to article V, section 18 of the Missouri Constitution, this Court reviews the commission's decision to determine if it is "supported by competent and substantial evidence upon the whole record." Additionally, section 287.495.1 provides, in pertinent part:

Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding.[2] The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;
(2) That the award was procured by fraud;
(3) That the facts found by the commission do not support the award;
(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

This Court reviews questions of law *de novo*. *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 808 (Mo. banc 2017).

*Cosby*, 579 S.W.3d at 205-06. "This Court strictly construes the provisions of workers' compensation statutes." *Id.* at 206, 207 n.4.

**Analysis**

The portions of subsections 2 and 3 of section 287.220 relevant to this appeal provide:

2. All cases of permanent disability where there has been previous disability due to injuries occurring prior to January 1, 2014, shall be compensated as provided in this subsection. . . .

3. (1) All claims against the second injury fund for injuries occurring after January 1, 2014, and all claims against the second injury fund involving a

---

[2] We defer to the Commission's findings of fact, but we view the evidence objectively and not in the light most favorable to the decision of the Commission. ***Dubuc v. Treasurer of the State of Missouri as Custodian of the Second Injury Fund***, No. WD 82809, 2020 WL 1016619, at *1 n.2, *4 (Mo.App. W.D. Mar. 3, 2020).

subsequent compensable injury which is an occupational disease filed after January 1, 2014, shall be compensated as provided in this subsection.

(2) No claims for permanent partial disability occurring after January 1, 2014, shall be filed against the second injury fund. Claims for permanent total disability under section 287.200 against the second injury fund shall be compensable only when the following conditions are met:

(a) a. An employee has a medically documented preexisting disability equaling a minimum of fifty weeks of permanent partial disability compensation according to the medical standards that are used in determining such compensation which is:

(i) A direct result of active military duty in any branch of the United States Armed Forces; or

(ii) A direct result of a compensable injury as defined in section 287.020; or

(iii) Not a compensable injury, but such preexisting disability directly and significantly aggravates or accelerates the subsequent work-related injury and shall not include unrelated preexisting injuries or conditions that do not aggravate or accelerate the subsequent work-related injury; or

(iv) A preexisting permanent partial disability of an extremity, loss of eyesight in one eye, or loss of hearing in one ear, when there is a subsequent compensable work-related injury as set forth in subparagraph b of the opposite extremity, loss of eyesight in the other eye, or loss of hearing in the other ear; and

b. Such employee thereafter sustains a subsequent compensable work-related injury that, when combined with the preexisting disability, as set forth in items (i), (ii), (iii), or (iv) of subparagraph a. of this paragraph, results in a permanent total disability as defined under this chapter; or . . . .

In *Cosby*, the employee-claimant injured his knee when he fell off a ladder at work on January 22, 2014.  579 S.W.3d at 205.  The employee-claimant had multiple previous disabilities from pre-2014, unrelated injuries, and, in February 2014, filed a claim for permanent total and permanent partial disability against the Second Injury Fund for the January 22, 2014 knee injury.  *Id.*  An ALJ and the Commission denied permanent total disability benefits because the employee-claimant continued to work, and denied

4

permanent partial disability benefits because the employee-claimant's knee injury occurred after January 1, 2014, and section 287.220.3(2) prohibits claims against the Second Injury Fund for permanent partial disability occurring after January 1, 2014. *Id.* at 207-08. On appeal before our Supreme Court pursuant to its exclusive appellate jurisdiction, the employee-claimant challenged only the denial of permanent partial disability benefits. *Id.* at 205-206 & n.2. The employee-claimant asserted in part that section 287.220.2 (rather than subsection 3) applied because all of his previous disabilities occurred before 2014 though his currently compensable knee injury occurred after January 1, 2014. *Id.* at 206.

In interpreting subsections 2 and 3 of section 287.220 and resolving the conflict between the two subsections, the Supreme Court stated:

> Mr. Cosby asserts a strict reading of section 287.220.2 allows PPD benefits when the previous disability was due to any injury before January 1, 2014. Mr. Cosby interprets "injuries" as used in section 287.220.2 to encompass all his preexisting conditions rather than the knee injury that precipitated the filing of his current claim against the fund. . . .
>
> Section 287.220.3(1) applies to "[a]ll claims against the second injury fund for injuries occurring after January 1, 2014." (Emphasis added). Section 287.020.3(1) defines "injury" to mean "an injury which has arisen out of and in the course of employment."[] When the legislature provides a statutory definition, it "supersedes the commonly accepted dictionary or judicial definition and is binding on the courts." *State ex rel. Jackson v. Dolan*, 398 S.W.3d 472, 479 (Mo. banc 2013). Therefore, section 287.220.3 applies to all claims for PPD benefits for injuries arising out of or in the course of employment after January 1, 2014.
>
> Importantly, section 287.220.3(2) goes on to provide: "No claims for permanent partial disability occurring after January 1, 2014, shall be filed against the second injury fund." That section does not differentiate between claims in which there has been previous disability prior to January 1, 2014, and claims in which the previous disability occurred after January 1, 2014. The plain and ordinary meaning of the language in section 287.220.3(2) precludes the filing of claims arising from injuries occurring after January 1, 2014, without regard to when any previous disability occurred. Because Mr. Cosby's 2014 knee injury arose out of

his employment after January 1, 2014, section 287.220.3 applies to bar his PPD benefits claim.

*Cosby*, 579 S.W.3d at 206-07 (footnote omitted). The Supreme Court then added:

> When read in the context of section 287.220 as a whole, section 287.220.2 *must* be interpreted to apply to *all* cases of permanent disability in which *all* injuries, including the subsequent compensable injury, occurred prior to January 1, 2014. In other words, section 287.220.2 applies to *all* PTD or PPD claims against the fund for injuries arising out of or in the course of employment when the injury causing PPD and the subsequent compensable injury *all* occurred prior to January 1, 2014. Section 287.220.3 applies to *all* PTD or PPD claims against the fund in which *any* injury arising out of or in the course of employment, including the subsequent compensable injury, occurred after January 1, 2014.[]
>
> Mr. Cosby's 2014 knee injury arising in the course of employment occurred after January 1, 2014. It follows that section 287.220.3, rather than section 287.220.2, applies to his claim for PPD benefits following his 2014 knee injury. Consequently, Mr. Cosby's PPD claim against the fund is not a claim authorized by the statute because his injury occurred after January 1, 2014. The commission, therefore, did not err in finding section 287.220.3 applied to Mr. Cosby's PPD claim.[]

*Cosby*, 579 S.W.3d at 207-08 (footnotes omitted) (emphasis added).

Subsequently, the Eastern District, in ***Krysl v. Treasurer of Missouri as Custodian of the Second Injury Fund***, 591 S.W.3d 13 (Mo.App. E.D. 2019), considered a fact pattern essentially the same as the fact pattern in this appeal with the non-material exception that the claim in ***Krysl*** was for permanent partial disability benefits rather than permanent total disability benefits as in this appeal. *Id.* at 15. In ***Krysl***, the employee-claimant filed a claim against the Second Injury Fund in July 2016 for an occupational disease (severe right carpal tunnel syndrome) that occurred on January 1, 2013, in combination with a previous disability for diabetes. *Id.* at 14-15. An ALJ awarded the employee-claimant permanent partial disability benefits, but the Commission reversed the award because the employee-claimant's claim was for an occupational disease and the claim was filed after January 1, 2014, with, in the Commission's reasoning, the result that

the claim for permanent partial disability was precluded under section 287.220.3. *Id.*

The employee-claimant appealed arguing that the date of his compensable occupational

injury was "determinative" of whether subsection 2 or 3 of section 287.220 applied

regardless of the fact his claim was filed after January 1, 2014. *Id.* at 15. The Eastern

District agreed with the employee-claimant, held that his claim "should be governed by

Section 287.220.2," and reversed the Commission's decision. *Id.* at 17. In doing so, the

Eastern District stated:

> Section 287.220 governs the compensation and payment of claims and was amended in 2013 to limit claims against the Fund effective January 1, 2014. Section 287.220.2 unequivocally allows compensation for claims filed against the Fund in, "*[a]ll cases* of permanent disability where there has been previous disability due to injuries occurring prior to January 1, 2014 . . . ." (emphasis added). The language in Section 287.220.3(1) specifically limits Fund liability for "*[a]ll claims* against the second injury fund *for injuries* occurring after January 1, 2014, and *all claims* against the second injury fund involving a *subsequent compensable injury which is an occupational disease* filed after January 1, 2014." (emphasis added).
>
> It is the distinction between accidental injury and occupational disease that is crucial to the interpretation of Section 287.220. Unlike an accidental injury, occupational diseases accrue over time. An occupational disease does not become a compensable injury until it causes the employee to become disabled, meaning it affects the employee's ability to perform ordinary tasks and harms his earning ability. *See Garrone v. Treasurer of State of Missouri*, 157 S.W.3d 237, 242 (Mo. App. E.D. 2004) (internal citations omitted). An employee can experience significant symptoms of an occupational disease well before it becomes a compensable injury. *Id.* In fact, an employee could even be substantially treated for an occupational disease but unless it becomes disabling prior to January 1, 2014, Subsection 287.220.3(1) precludes Fund liability [for permanent partial disability].
>
> The plain terms of Section 287.220.2 exclude "*[a]ll cases* of permanent disability where there has been previous disability due to injuries occurring prior to January 1, 2014 . . . ." (emphasis added). It does not distinguish between accidental injuries and occupational disease. However, the legislature then specifically uses the term "subsequent compensable injury" in its limitation of Fund liability for occupational disease in Section 287.220.3(1). *See Macon Co. Emergency Services Board*, 485 S.W.3d at 355 ("It is presumed that each word, clause,

7

sentence and section of a statute will be given meaning and that the legislature did not insert superfluous language."). Thus when considering occupational disease, these two phrases, in conjunction with the term "all cases" in subsection 2 clearly indicates the legislature's intent to include compensable occupational diseases occurring prior to January 1, 2014, which by their very nature could result in a claim filed after January 1, 2014.[] Thus, all claims for any existing injuries due to occupational disease that were not a disabling "subsequent compensable injury" before January 1, 2014, are barred. The plain language of subsection 3(1) simply, if less than artfully, limits the Fund's liability for all claims for any injuries, both accidental and occupational, which occurred after January 1, 2014.[]

Moreover, and of greater concern, the Commission's conclusion effectively inserts the terms "*except for occupational disease*" in subsection 2 and "*regardless of the date of injury*" into Section 287.220.3(1) which neither the Commission nor this court can do. *See Macon Co. Emergency Services Board*, 485 S.W.3d at 355. Not only does the Commission's interpretation ignore the use of "subsequent compensable injury" by the legislature and [sic] but also requires the addition of words not contained in the statute. This contradicts the basic rules of statutory interpretation and our primary function to ascertain legislative intent from the language used in the statute. *Anderson ex rel. Anderson*, 248 S.W.3d 101, 106 (2008).

*Id.* at 16-17 (footnotes omitted) (bracketed "for permanent partial disability" added). The

Eastern District also noted in a footnote that:

The Missouri Supreme Court's recent decision in *Cosby* supports this interpretation. Although the injury at issue in *Cosby* was accidental, the Court's holding regarding the applicability of Section 287.220.3 to preclude claims against the Fund for PPD did not rest on the nature of the injury. Instead, the Court focused solely upon the date of the injury, holding if the injury causing PPD and the subsequent compensable injury occurred prior to January 1, Section 287.220.2 governs the Fund's liability. [*Cosby*, 579 S.W.3d] at 211.

*Id.* at 16 n.2. On February 4, 2020, the Supreme Court denied the Treasurer's application

to transfer the appeal to the Supreme Court from the Eastern District.

Most recently, the Western District in ***Dubuc v. Treasurer of the State of***

***Missouri as Custodian of the Second Injury Fund***, No. WD 82809, 2020 WL 1016619

(Mo.App. W.D. Mar. 3, 2020), considered a claim against the Second Injury Fund for

8

permanent total disability benefits attributable to the employee-claimant's fall from a ladder at work in October 2015 in combination with multiple previous disabilities due to injuries before 2014. *Id*. at *1-2, *3, *5. In distinguishing *Krysl*, the Western District stated in a footnote:

> In his brief, Dubuc suggests that the Eastern District agrees that section 287.220.2 applies if *any* preexisting disability or compensable workplace injury occurs before January 1, 2014, and that section 287.220.3 applies *only if all* preexisting disabilities and the compensable workplace injury occur after January 1, 2014, relying on *Krysl v. Treasurer of Missouri as Custodian of Second Injury Fund*, 591 S.W.3d 13 (Mo. App. E.D. 2019). *Krysl* did not so hold. In *Krysl*, "[a]ll parties unequivocally stipulated [that] Krysl's occupational disease occurred on or about January 1, 2013. Thus, based upon the plain language of Section 287.220, the Fund's liability ... should be governed by Section 287.220.2." *Id*. at 17. This is precisely the outcome that *Cosby* dictates. *Krysl* is of no import to this case, as none of the medical conditions or workplace injuries relied on to assert a claim against the Fund [in *Krysl*] occurred after January 1, 2014.

*Id*. at *6 n.9 (bracketed "in *Krysl*" added).

Consistent with the Eastern District in *Krysl* and the Western District in *Dubuc*, we believe that our Supreme Court's interpretation of subsections 2 and 3 of section 287.220 in *Cosby* controls the resolution of this appeal. Because Claimant's compensable occupational disease occurred before January 1, 2014 (i.e., on December 13, 2013), the Commission should have decided Claimant's claim under section 287.220.2 rather than section 287.220.3 even though Claimant did not file her claim for the occupational disease against the Second Injury Fund until after January 1, 2014 (i.e., in November 2014).

The Commission's decision is reversed and remanded with instructions to reinstate the ALJ's award of permanent total disability benefits to Claimant.

9

Nancy Steffen Rahmeyer, J. – Opinion Author

Gary W. Lynch, P.J., – Concurs

William W. Francis, Jr., J., – Concurs